NOTICE
Decision filed 05/17/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 140334

NO. 5-14-0334

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 06-CF-46 |
| | ) | |
| JOHN L. BRYANT, | ) | Honorable |
| | ) | William G. Schwartz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.

Justices Welch and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, John L. Bryant, appeals from the circuit court's order denying his second motion to withdraw his guilty plea. For the reasons that follow, we affirm the circuit court's judgment but remand for a new sentencing hearing.

¶ 2                                  BACKGROUND

¶ 3     On the morning of January 28, 2006, Christopher Gandy's burnt car and burnt corpse were discovered in a cemetery south of Murphysboro. Gandy was a drug dealer from Chicago who had been attending Southern Illinois University at Carbondale. An autopsy revealed that he had been stabbed numerous times about the face and chest and had

1

repeatedly been struck in the head with what could have been a wrench or a pipe-like object. An ensuing homicide investigation led authorities to four suspects: Rocky Maki, Jeffrey Holt, Lisa Bryant, and Lisa's husband, the defendant. All four were drug addicts from Murphysboro who had previously purchased cocaine from Gandy. The State's theory of guilt was that all four had participated in the events that led to Gandy's death but that the defendant and Maki were more culpable than Holt or Lisa. The defendant and Lisa were arrested on the afternoon of January 28, 2006, at a hotel in Carbondale.

¶ 4 In March 2006, following Maki's arrest, the State filed an amended information charging Maki, Lisa, and the defendant with four counts of first-degree murder (counts I, II, III, and IV) under a theory of accountability. See 720 ILCS 5/5-2(c), 9-1(a) (West 2004). In exchange for his cooperation with the State, Holt was not charged with anything. The State subsequently offered Lisa a negotiated plea to a lesser charge in exchange for her cooperation, but she refused. When the defendant waived his right to a preliminary hearing, the circuit court admonished him that the crime of first-degree murder "carries a penitentiary sentence of between 20 and 60 years." See 730 ILCS 5/5-8-1(a)(1)(a) (West 2004).

¶ 5 Citing antagonistic defenses, the defendant and Lisa later filed a motion arguing that their trial should be severed from Maki's. The State agreed, and the motion was granted without objection.

¶ 6 In April 2006, at a pretrial hearing, the defendant informed the circuit court that by prescription, he had been taking 5 milligrams of Valium (diazepam) twice a day and 10 milligrams of Lexapro (escitalopram) once a day. The defendant further informed the court that he had been taking the medications by prescription prior to his arrest. When the court

2

asked the defendant if the drugs had "created any problems," he indicated that they did not affect him and did not interfere with his judgment, focus, or ability to assist in his defense. The defendant's attorney at the time confirmed that the defendant had been able to communicate with him "without any problems."

¶ 7    In June 2006, a Jackson County jury found the defendant and Lisa guilty of first-degree murder. The State's evidence established, among other things, that after Lisa lured Gandy to her and the defendant's home, where she and the defendant had purchased drugs from him on prior occasions, the defendant and Maki attacked him and robbed him of his money and cocaine. The evidence further established that the defendant had subsequently inflicted the wounds that had caused Gandy's death. The jury rejected the defendant's and Lisa's purported defense that they were asleep in their bedroom during the events in question and that Holt and Maki were solely responsible for the murder.

¶ 8    In September 2006, Maki pled guilty to a reduced charge of second-degree murder (720 ILCS 5/9-2(a) (West 2004)) and was sentenced to 20 years in the Illinois Department of Corrections. In October 2006, the defendant's and Lisa's case proceeded to a sentencing hearing before the Honorable W. Charles Grace, who had presided over their trial. At the hearing, the State argued that the defendant should receive a 45-year sentence. The State also noted that by statute, the defendant would be required "to serve 100 percent of [his] time." Noting that the applicable sentencing range was 20 to 60 years, the defendant's attorney argued that the minimum sentence of 20 years would be appropriate under the circumstances. Before imposing sentence, the circuit court noted that the mandatory minimum sentence was 20 years. Referring to the defendant's crime as "brutal and heinous,"

3

the court ultimately sentenced him "to 50 years in the Illinois Department of Corrections." Finding that Lisa was less culpable than the defendant, the court sentenced her to 25 years.

¶ 9    The presentence investigation report (PSI) that was prepared for the defendant's sentencing hearing indicates that he had been prescribed Valium for anxiety in 2005 and had been taking it ever since.  The PSI further indicates that he had been prescribed Celexa (citalopram) for depression in September 2006 and had been taking Lexapro for depression prior to that.  When the PSI was prepared, the defendant's only reported medical complaint was that he had been seeing a physician for "problems related to his colon."

¶ 10    In August 2007, Holt, who had been the State's key witness at the defendant's and Lisa's trial, passed away.  In April 2009, Lisa and the defendant were granted a new trial when their convictions were reversed on direct appeal due to the ineffective assistance of counsel.  *People v. Bryant*, 391 Ill. App. 3d 228 (2009).  In June 2009, the State indicated that Maki would be testifying against the defendant and Lisa at their retrial.

¶ 11    In October 2010, without objection, the circuit court granted the defendant's motion to sever his retrial from Lisa's.  Lisa subsequently agreed to testify against the defendant in exchange for the State's agreement that she be allowed to enter a plea of guilty to a charge of second-degree murder with a recommended sentence of 11½ years.

¶ 12    In March 2011, the defendant's retrial commenced with new counsel and with the Honorable E. Dan Kimmel presiding.  At the final pretrial conference held days before, the State advised the court that plea negotiations had been going on for "probably four or five months" but that no agreed disposition had been reached.

4

¶ 13    On the second day of the defendant's retrial, Holt's testimony from the defendant's first trial was admitted as substantive evidence.  See 725 ILCS 5/115-10.4 (West 2010); Ill. R. Evid. 804 (eff. Jan. 1, 2011).  At the conclusion of the second day, defense counsel asked that after Maki testified for the State, he be "made available for the defense's case in chief as well."

¶ 14    On the third day of the retrial, the State's first witness was the pathologist who performed Gandy's autopsy, and the State's second witness was Lisa.  After a recess following Lisa's direct examination testimony, the State advised the circuit court that the defendant had decided to enter a negotiated guilty plea.  Thereafter, the defendant entered a plea of guilty to count IV in exchange for the State's recommendation that he receive a 28-year sentence followed by a 3-year term of mandatory supervised release.  The defendant's attorney also tendered a written plea-of-guilty form that counsel and the defendant had reviewed and signed.

¶ 15    Before accepting the defendant's plea, the circuit court recited the allegations set forth in count IV and admonished him, among other things, that by pleading guilty, there would be no further trial.  The court also confirmed that no one had threatened or forced him to plead guilty.  When the court asked the defendant if he was taking any medications, he indicated that he was taking one Klonopin (clonazepam) pill per day but that the drug did not "affect or alter [his] mind" or otherwise impair his ability "to understand what's happening."  After the parties jointly waived the preparation of a PSI, the court informed the defendant that it would proceed to sentence him without the benefit of the report.  Finding that the defendant had

knowingly and voluntarily entered his guilty plea, the court subsequently accepted the plea and entered an order sentencing the defendant in accordance with the parties' agreement.

¶ 16    In April 2011, the defendant filed a motion to withdraw his guilty plea, alleging that due to his ingestion of Klonopin, "his state of mind at the time of his guilty plea was such that no type of admonishment would have made his plea knowing or voluntary."  In May 2011, the cause proceeded to a hearing with Judge Kimmel presiding.

¶ 17    At the hearing, the defendant testified that when he entered his guilty plea, the Klonopin that he had been taking had interfered with his ability to "reason properly" and "think clearly."  The defendant stated that he had since "cut [his] dose in half."  The defendant further stated that he did not remember telling the court that the Klonopin did not affect or alter his mind or otherwise impair his ability to understand what was happening. The defendant suggested that his trial attorney had "talked [him] into" pleading guilty and had advised him that he could withdraw his plea within three or four days.  Indicating that he was able to recall specific details of their testimony, the defendant also claimed that Lisa and Holt had testified falsely against him.  Noting that he and Lisa had "been together 19 years," the defendant maintained that her testimony had "destroyed" him and "totally squashed [his] mind."  The defendant recalled having been distraught and crying when he entered his plea. The defendant maintained that he had "never cried so hard in [his] life."  Notably, during the argument portion of the hearing, defense counsel indicated that the defendant was not challenging the adequacy of the admonishments that he had received.

¶ 18    At the conclusion of the hearing, the circuit court denied the defendant's motion to withdraw his guilty plea.  Finding that the defendant had been competent to stand trial, the

6

court concluded that he had knowingly and intelligently entered his plea while represented by "able counsel." The court further determined that the defendant was no "stranger to the courts and [had] knowingly accepted the benefit of a negotiated plea in the midst of a hard fought jury trial." The court stated that it "understood" that the defendant had been upset and surprised by Lisa's testimony.

¶ 19    In February 2014, the circuit court's order denying the defendant's motion to withdraw his guilty plea was vacated, and the cause was remanded for further proceedings due to counsel's failure to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). *People v. Bryant*, 2014 IL App (5th) 110235-U. In March 2014, the circuit court appointed new counsel to represent the defendant, and in April 2014, the defendant filed a second motion to withdraw his plea. The defendant's second motion alleged that as a result of the Klonopin that he had been taking, his mind was " 'cloudy and altered' " when he pled guilty, and thus "no type of admonishment would have made his plea knowing and voluntary." The motion further alleged that the defendant's trial attorney had erroneously advised him that "if he pled guilty[,] he would have an absolute right to withdraw the plea within 3-4 days." In June 2014, the cause proceeded to a hearing before the Honorable William G. Schwartz, where the following evidence was adduced.

¶ 20    At the outset, the defendant testified that he had never harmed Gandy and that Holt's and Lisa's claims to the contrary were "not accurate." Stating that Maki had been given "a plea of 20 years at 50 percent" and that Lisa had been given "a plea of 12 years at 50 percent," the defendant further testified that he had thought that when he agreed to a 28-year sentence, he would be "getting 50 percent" as well. The defendant also claimed that his trial

attorney had advised him that he could automatically withdraw his guilty plea in three to four days.

¶ 21     With respect to the Klonopin that he had been prescribed, the defendant testified that he had been taking it twice a day during his retrial and that it had "[m]ost certainly" affected his ability to understand the plea proceedings.  The defendant testified that he could "recall very little" of what had happened on the day that he pled and that he did not remember being admonished about anything.  The defendant indicated that although he had been taking Klonopin by prescription since 2009, he had been unaware of the effects that the drug had had on him when he entered his plea in 2011.  The defendant claimed that he had stopped taking the medication the day after he pled guilty and that his mind was "now clear."

¶ 22     With respect to the plea-of-guilty form that he signed, the defendant asserted that he had been unable to read the document because he had not been wearing prescription eyeglasses.  The defendant indicated that he had signed the form because his trial attorney had advised him to do so.  The defendant testified that he had been emotionally distraught and crying when he entered his plea.

¶ 23     The defendant's trial attorney testified that he could not recall whether he had ever been advised that the defendant had been taking Klonopin, but that he had never seen the defendant exhibit any behavior that had caused him to ever question the defendant's competency or fitness to stand trial.  Trial counsel further indicated that the defendant had never acted confused as to what was happening.

¶ 24     Regarding the events that led to the entry of the defendant's guilty plea, counsel explained that after Lisa's direct examination testimony, he and the defendant had discussed

the possibility of negotiating a plea agreement for a 28-year sentence, so he approached the State on the defendant's behalf. When counsel "went back" and advised the defendant that the State had concurred with the terms of the proposed agreement, the defendant decided to plead guilty. Counsel testified that he had never told the defendant that the negotiated sentence "would be served at 50 percent." Counsel further testified that he and the defendant had previously discussed the possibility of negotiating a plea "numerous times" and that the sentence was "always 100 percent." Counsel stated that the defendant had not shown any confusion regarding the trial court's admonishments or the plea-of-guilty form that he had reviewed and signed. Counsel testified that he had never told the defendant that he had the absolute right to withdraw his guilty plea within three or four days. Counsel explained that the defendant had been very distraught following Lisa's testimony because his "whole trial strategy was predicated on [her] not testifying in a way that would implicate him."

¶ 25    At the conclusion of the hearing, the circuit court denied the defendant's second motion to withdraw his guilty plea. The court determined that the defendant's claim that his prescribed Klonopin had clouded his judgment was "unfounded" and that his claim that his trial attorney had advised him that he had an absolute right to withdraw his guilty plea within three or four days was "patently false." The court also found that the defendant had initiated the midtrial plea negotiations, that his decision to do so had been prompted by Lisa's incriminating testimony, and that he had been adequately admonished when he entered his plea. The court concluded that the defendant's plea had been voluntarily entered and that he was "suffering from post-decision remorse." The defendant subsequently filed a timely notice of appeal.

9

¶ 26                                    DISCUSSION

¶ 27    The defendant argues that the circuit court's denial of his second motion to withdraw his guilty plea should be reversed because he was not in a proper mental state when he entered the plea and because the circuit court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402 (Rule 402) (eff. July 1, 1997).  Alternatively, the defendant argues that the cause must be remanded for a new sentencing hearing because the parties impermissibly waived the preparation of a PSI.  For the reasons that follow, we affirm the circuit court's judgment but remand for resentencing because the record does not indicate that the court considered the defendant's prior criminal history before accepting his plea.

¶ 28                                Standard of Review

¶ 29    "Entering a guilty plea is a grave and solemn act."  (Internal quotation marks omitted.) *People v. Edwards*, 197 Ill. 2d 239, 271 (2001) (quoting *People v. Evans*, 174 Ill. 2d 320, 326 (1996), quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "It is not a temporary and meaningless formality reversible at the defendant's whim."  (Internal quotation marks omitted.)  *Id*. at 271-72 (quoting *Evans*, 174 Ill. 2d at 326, quoting *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975)).  As a result, a defendant does not have an automatic right to withdraw his guilty plea.  *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). "Rather, he must show 'a manifest injustice under the facts involved' to obtain leave to withdraw his plea."  *Id*. (quoting *People v. Pullen*, 192 Ill. 2d 36, 39 (2000)).  "The decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion."  *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).  An abuse of discretion occurs where the circuit court's ruling is

10

arbitrary, fanciful, unreasonable, or no reasonable person would take the court's adopted view. *Id.*

¶ 30                                    The Defendant's Mental State

¶ 31    The defendant argues that the circuit court should have granted his second motion to withdraw his guilty plea because he was not in a proper mental state when he entered the plea. The defendant maintains that the court should have concluded that his ability to knowingly and voluntarily plead guilty had been impaired by his ingestion of Klonopin and the emotional distress that he had been experiencing at the time. We disagree.

¶ 32    "Every defendant is presumed to be fit to stand trial, or to plead, and be sentenced." *People v. Jamison*, 197 Ill. 2d 135, 152 (2001). "A defendant is fit to stand trial unless a mental or physical problem renders him unable to understand the nature and purpose of the proceedings against him or to aid in his defense." *People v. Stokes*, 333 Ill. App. 3d 655, 660 (2002). A defendant who is receiving psychotropic drugs or medications is not presumed to be unfit "solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104-21(a) (West 2010). A defendant claiming that he was unfit has the burden of proving that when he stood trial or pled guilty, " 'there were facts in existence which raised a real, substantial and legitimate doubt as to his mental capacity to meaningfully participate in his defense and cooperate with counsel.' " *People v. Moore*, 408 Ill. App. 3d 706, 710 (2011) (quoting *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991)). Such facts include the defendant's behavior and demeanor and any representations made by defense counsel regarding the defendant's competence. *Id.* at 711. "A circuit court's ruling on the issue of

11

fitness will not be reversed unless it is against the manifest weight of the evidence." *Jamison*, 197 Ill. 2d at 153.

¶ 33 Here, the circuit court's conclusion that despite his ingestion of Klonopin, the defendant was competent to stand trial and plead guilty is clearly not against the manifest weight of the evidence. The record indicates that the defendant's postplea claims notwithstanding, he had been taking psychotropic drugs to treat anxiety and depression since 2005 with no reported complaints. The record further indicates that the defendant's medications had no effect on his ability to understand the nature and purpose of the proceedings against him or to aid in his defense. Prior to his first trial and when later entering his plea, the defendant himself confirmed that such was the case. Moreover, both of the defendant's trial attorneys made representations indicating that he was fit, as did Judge Kimmel, who had presided over the retrial, accepted the plea, and denied the defendant's first motion to withdraw the plea. Judge Schwartz further concluded that the defendant's postplea claims regarding the effects of the Klonopin were self-serving fabrications. See *People v. Moreno*, 2015 IL App (2d) 130581, ¶ 19. We accordingly reject the defendant's contention that the court erred in concluding that he was mentally competent when he entered his plea.

¶ 34 We likewise reject the defendant's contention that the circuit court should have found that he had been too emotionally distraught to have validly entered his plea. Although the defendant testified that Lisa's testimony had "destroyed" him and that he had "never cried so hard in [his] life," there is no credible evidence that the defendant's alleged emotional state impacted his ability to make a knowing and voluntary guilty plea. We also note that the record of the plea proceedings does not indicate that the defendant was discomposed or that

12

the proceedings were "unconventional and confusing" as he suggests on appeal. We acknowledge that defense counsel indicated that the defendant had been distraught because Lisa had frustrated his trial strategy and that Judge Kimmel indicated that he "understood" that the defendant had been upset and surprised by Lisa's testimony. However, Judge Kimmel determined that the defendant was no "stranger to the courts and [had] knowingly accepted the benefit of a negotiated plea in the midst of a hard fought jury trial." After hearing the defendant's and his trial attorney's testimony, Judge Schwartz reached a similar conclusion. Sitting as the trier of fact, the circuit court thus rejected the defendant's intimations that his emotional reactions to Lisa's perceived betrayal had rendered him unable to have knowingly and voluntarily pled. It is well settled that "[a] trier of fact, by virtue of its ability to actually observe the demeanor and conduct of witnesses, is in the best position to assess their credibility" and that its findings are therefore given deference. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 19. Under the circumstances, we cannot conclude that the circuit court abused its discretion in denying the defendant's second motion to withdraw his guilty plea.

¶ 35                                    The Rule 402 Admonishments

¶ 36    "In order to satisfy due process, a guilty plea must be affirmatively shown to have been made voluntarily and intelligently." *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). Rule 402 was adopted to ensure compliance with these due process requirements. *Id.* "Before a trial court can accept a guilty plea, Rule 402(a) requires that the defendant be admonished concerning the nature of the charge, the minimum and maximum sentences, the right to plead guilty or not guilty, and the rights that are waived by pleading guilty." *People v. Sharifpour*,

13

402 Ill. App. 3d 100, 114 (2010). If the guilty plea is the result of a plea agreement, Rule 402(b) further requires the court to "determine whether any force or threats or any promises, apart from [the] plea agreement, were used to obtain the plea." Ill. S. Ct. R. 402(b) (eff. July 1, 1997). Nevertheless, "[s]ubstantial, not literal, compliance with Rule 402 is all that is required." *Sharifpour*, 402 Ill. App. 3d at 114.

¶ 37    As previously noted, before accepting the defendant's guilty plea, the circuit court recited the allegations set forth in count IV and advised him, among other things, that by pleading guilty, there would be no further trial. The court also confirmed that no one had threatened or forced him to plead guilty. The court did not, however, advise the defendant that the applicable sentencing range was 20 to 60 years or that he had the right to persist in his plea of not guilty. The court also failed to inquire whether any promises, apart from the plea agreement, had been used to obtain his plea. On appeal, the State thus concedes that the circuit court failed to comply with Rule 402 in these respects. The defendant concedes that he raises his Rule 402 claims for the first time on appeal and that any claim not raised in a motion to withdraw guilty plea is generally deemed waived. See *People v. Davis*, 145 Ill. 2d 240, 250 (1991). To circumvent the waiver rule, the defendant argues that we should view the circuit court's inadequate admonishments under the doctrine of plain error or as an ineffective-assistance-of-counsel claim based on trial counsel's failure to object. See *In re Detention of Hughes*, 346 Ill. App. 3d 637, 651 (2004). In response, the State suggests that either way, the defendant's contention that his guilty plea must be vacated ultimately fails because he is unable to establish prejudice. We agree. We further note that given postplea counsel's representation that the defendant was not challenging the sufficiency of the

14

admonishments that he had been given, the defendant's present claims are arguably barred by estoppel, which goes beyond mere waiver and forecloses any plain-error review. See *People v. Jones*, 2015 IL App (1st) 121016, ¶ 109.

¶ 38    "With regard to inadequate admonishments, the failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea." *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). If the circuit court "fails to give the defendant the admonishments required by Rule 402 it is possible that this action can amount to plain error" (*Davis*, 145 Ill. 2d at 250) and that any resulting prejudice might thus provide a basis for an ineffective-assistance-of-counsel claim (see *People v. Pace*, 2015 IL App (1st) 110415, ¶ 78). Nevertheless, "[w]hether reversal is required depends on whether real justice has been denied or whether [the] defendant has been prejudiced by the inadequate admonishment." *Davis*, 145 Ill. 2d at 250. Furthermore, "it is [the] defendant who must demonstrate that he has been prejudiced by the improper admonishment." *Delvillar*, 235 Ill. 2d at 522. If the record shows that the defendant's guilty plea was knowingly and voluntarily entered and was "not the result of any force, threats, or promises, then any failure to strictly comply with Rule 402 is deemed harmless." *Sharifpour*, 402 Ill. App. 3d at 114.

¶ 39    Here, the circuit court's failure to inform the defendant that he had the right to persist in his plea of not guilty was harmless because the record demonstrates that he was fully aware of the right. When the defendant entered his plea, he acknowledged that he was aware that by pleading guilty, there would be no further trial. Additionally, at a subsequent hearing, he acknowledged that his retrial had been terminated due to the entry of his plea. As

the State observes on appeal, "it is inconceivable how [the] defendant could not have known he had a right to persist in his not guilty plea, given that he was actively engaged in the exercise of that right when he decided to plead guilty."

¶ 40    The circuit court's failure to inquire whether any promises apart from the parties' agreement had been made to obtain the defendant's guilty plea was equally harmless because the record indicates that no such promises had ever been made.  See *id.*  On appeal, referencing his postplea claim that his trial attorney had erroneously advised him that he could withdraw his plea within three or four days, the defendant suggests prejudice by asserting that had the court properly inquired, he would have "revealed that counsel had assured him that he could automatically withdraw the plea."  At the hearing on the defendant's second motion to withdraw his guilty plea, however, counsel testified that no such assurances had been made, and the circuit court ultimately determined that the defendant's contrary assertions were "patently false."  The defendant is therefore unable to demonstrate that he was prejudiced by the court's failure to inquire whether any promises apart from the terms of the parties' agreement had been used to obtain his plea.  We also note that the plea-of-guilty form that the defendant had reviewed and signed stated, "Other than the plea agreement, no other promises have been made to me to cause me to enter this plea."

¶ 41    Lastly, the circuit court's failure to admonish the defendant that the applicable sentencing range for his offense was 20 to 60 years was also harmless under the circumstances.  In *People v. Krantz*, 58 Ill. 2d 187, 195 (1974), our supreme court held that the circuit court's failure to admonish the defendant as to the applicable sentencing range before accepting his negotiated guilty plea was not reversible error where there was "no

16

doubt the defendant understood what punishment, apart from what he negotiated for with the prosecutor, he could have received." The court noted that the defendant and his attorney had negotiated the disposition that had ultimately been imposed, that the defendant had obviously tried to negotiate the lowest possible sentence, and that the defendant had never claimed that he had been prejudiced by the omitted admonishment. *Id*. at 194-95. In *People v. Hale*, 96 Ill. App. 3d 187, 190 (1981), this court subsequently cited *Krantz* when stating that where a defendant is not properly admonished as to the applicable sentencing range before entering a negotiated guilty plea but is "represented by counsel at the time the guilty plea was negotiated and accepted, reversible error would occur only if he can establish that he was actually unaware of the possible punishment."

¶ 42    Here, the record demonstrates that the defendant was fully aware that he was facing a sentence of 20 to 60 years and that as the circuit court determined, he "knowingly accepted the benefit of a negotiated plea in the midst of a hard fought jury trial." The defendant has thus failed to meet his burden of establishing that he was prejudiced by the circuit court's failure to admonish him as to the applicable sentencing range, and his assertion that he was denied "real justice because he pled guilty without a complete understanding and knowledge of the ramifications of his guilty plea" is belied by the record.

¶ 43    In March 2006, the circuit court advised the defendant that the crime of first-degree murder "carries a penitentiary sentence of between 20 and 60 years." In June 2006, he was convicted by a jury. In October 2006, following a sentencing hearing where the applicable range was stated and trial counsel argued for the minimum sentence of 20 years, the defendant received a 50-year sentence, despite the State's 45-year recommendation. Prior to

17

the commencement of the defendant's retrial, Lisa agreed to testify for the State, and for months, the defendant and the State engaged in plea negotiations. Following Lisa's testimony and before Maki had the opportunity to testify, trial counsel approached the State on the defendant's behalf and asked whether a plea for a 28-year sentence would be an acceptable disposition. When the State responded affirmatively, the defendant decided to plead guilty and was sentenced in accordance with the terms of the negotiated agreement. The defendant subsequently filed two motions to withdraw his guilty plea, and hearings were held on both motions. At the hearing on the first motion, postplea counsel indicated that the defendant was not challenging the sufficiency of the admonishments that had been given. Now, for the first time on appeal, the defendant suggests that he did not know that the applicable sentencing range was 20 to 60 years. Under the circumstances, "[w]e have no doubt [that] the defendant understood what punishment, apart from what he negotiated for with the prosecutor, he could have received" (*Krantz*, 58 Ill. 2d at 195), and that he entered his plea fully aware of its "direct consequences" (*People v. Williams*, 188 Ill. 2d 365, 371 (1999)).

¶ 44 The defendant urges us to follow *People v. Vasquez*, 332 Ill. App. 3d 269, 271-74 (2002), wherein the defendant, represented by counsel, entered a negotiated guilty plea without first being advised as to the minimum and maximum sentences that he was eligible to receive. Although the circuit court sentenced the defendant to the nine-year term that he had negotiated, the appellate court rejected the State's argument that he had been properly admonished because he knew that he would receive a nine-year sentence. *Id.* at 273-74. The court explained:

18

"The trial court's responsibility under Rule 402 was not negated by the fact that [the defendant] had negotiated a plea agreement with the State. Rule 402 requires the trial court to 'spell out' to the defendant the maximum and minimum sentences prescribed by law. [Citation.] Here, that was not done, and consequently, [the defendant's] guilty pleas must be vacated and this matter remanded to the trial court." *Id*. at 276.

¶ 45 We decline to follow *Vasquez*. Not only is its holding at odds with *Krantz* and *Hale*, its reasoning presumes that whenever a defendant is not admonished as to the applicable sentencing range, his plea is not knowingly and voluntarily entered and prejudice need not be established. Such reasoning is "incorrect." *Pace*, 2015 IL App (1st) 110415, ¶ 54. Since *Davis*, our supreme court has consistently held that whether a guilty plea should be vacated due to the circuit court's failure to properly admonish a defendant pursuant to Rule 402 depends on whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment. See *People v. Henderson*, 217 Ill. 2d 449, 458-59 (2005); *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005); *Fuller*, 205 Ill. 2d at 323; *Davis*, 145 Ill. 2d at 250; see also *Pace*, 2015 IL App (1st) 110415, ¶ 54 ("Illinois courts have repeatedly held that a defendant must demonstrate prejudice as a result of an improper Rule 402 admonishment in order to obtain reversal of a trial court order denying a motion to vacate a guilty plea.").

¶ 46                                  Waiver of the PSI

¶ 47 As previously noted, when the defendant entered his negotiated plea, the parties jointly waived the preparation of a PSI, and the court informed him that it would sentence

19

him without the benefit of the report. No on-the-record finding as to the defendant's prior criminal history was made, however. On appeal, the parties agree that this was improper.

¶ 48 Section 5-3-1 of the Unified Code of Corrections provides as follows:

"Presentence Investigation. A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.

However, other than for felony sex offenders being considered for probation, the court need not order a presentence report of investigation where both parties agree to the imposition of a specific sentence, provided there is a finding made for the record as to the defendant's history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment.

The court may order a presentence investigation of any defendant." 730 ILCS 5/5-3-1 (West 2010).

¶ 49 Section 5-3-1 requires strict compliance and is not subject to waiver. *People v. Youngbey*, 82 Ill. 2d 556, 564-65 (1980). When presented with a negotiated plea for an agreed-upon sentence, "[s]ection 5-3-1 mandates that a sentencing judge be aware of the history of the defendant's criminality and delinquency in assessing whether to accept the negotiated plea." *People v. Evans*, 273 Ill. App. 3d 252, 256-57 (1994). If the circuit court fails to comply with section 5-3-1, the sentence imposed must be vacated, and the cause must be remanded for a new sentencing hearing so that the court can consider the defendant's criminal history before deciding if the negotiated sentence is appropriate. *People v. Walton*, 357 Ill. App. 3d 819, 824 (2005).

20

¶ 50    Here, when the defendant entered his plea, the parties did not ask Judge Kimmel to consider the PSI that had been presented to Judge Grace at the defendant's 2006 sentencing hearing, and as indicated, there was no finding made for the record as to the defendant's "history of delinquency or criminality, including any previous sentence to a term of probation, periodic imprisonment, conditional discharge, or imprisonment." 730 ILCS 5/5-3-1 (West 2010).  The parties thus agree that the cause must thus be remanded for a hearing "whereby the sentencing judge is to be informed of the history of the delinquency and criminality of defendant." *Evans*, 273 Ill. App. 3d at 259.  If after considering the defendant's prior criminal history, the circuit court does not concur with the parties' negotiated 28-year sentence, then the defendant will be allowed to withdraw his guilty plea. *Walton*, 357 Ill. App. 3d at 824.

¶ 51                                CONCLUSION

¶ 52    For the foregoing reasons, we hereby affirm the circuit court's judgment denying the defendant's second motion to withdraw his guilty plea.  We vacate the sentence imposed on the plea, however, and remand the cause for a new sentencing hearing.

¶ 53    Affirmed in part and vacated in part; cause remanded with directions.

2016 IL App (5th) 140334

NO. 5-14-0334

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,           )     Appeal from the
                                               )     Circuit Court of
　　　　Plaintiff-Appellee,                      )     Jackson County.
                                               )
v.                                             )     No. 06-CF-46
                                               )
JOHN L. BRYANT,                                )     Honorable
                                               )     William G. Schwartz,
　　　　Defendant-Appellant.                     )     Judge, presiding.
_____

**Opinion Filed:**　　　　　May 17, 2016
_____

**Justices:**　　　　Honorable S. Gene Schwarm, P.J.

　　　　　　　　　Honorable Thomas M. Welch, J., and
　　　　　　　　　Honorable James R. Moore, J.,
　　　　　　　　　Concur
_____

**Attorneys**　　　Michael J. Pelletier, State Appellate Defender, Ellen J. Curry,
**for**　　　　　　Deputy Defender, Lawrence J. O'Neill, Assistant Appellate
**Appellant**　　　Defender, Office of the State Appellate Defender, Fifth Judicial
　　　　　　　　　District, 909 Water Tower Circle, Mt. Vernon, IL 62864
_____

**Attorneys**　　　Hon. Michael Carr, State's Attorney, Jackson County Courthouse,
**for**　　　　　　Murphysboro, IL 62966; Patrick Delfino, Director, Stephen E.
**Appellee**　　　Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office
　　　　　　　　　of the State's Attorneys Appellate Prosecutor, Fifth District
　　　　　　　　　Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
　　　　　　　　　Vernon, IL 62864
_____