2020 IL App (1st) 170119-U

No. 1-17-0119

Order filed September 8, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 13491 |
| | ) | |
| ELBONIE BURNSIDE, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's summary dismissal of defendant's postconviction petition where it failed to state the gist of a constitutional claim that (1) her guilty plea was not voluntarily made, and (2) she was denied her right to the effective assistance of counsel.

¶ 2    Pursuant to a 2003 negotiated plea agreement, defendant Elbonie Burnside pleaded guilty to first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)) and was sentenced to 35 years' imprisonment. Defendant did not file a motion to withdraw her plea or a direct appeal.

¶ 3    In September 2016, defendant filed a petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The circuit court summarily dismissed defendant's petition, finding it frivolous and patently without merit. Defendant appeals, contending her petition raised the gist of a constitutional claim that her plea was not voluntary and that she was denied the effective assistance of counsel during the plea proceedings. We affirm.

¶ 4    The State charged defendant by indictment with 13 counts of first degree murder in the July 2000 shooting death of Katrina Herlihy.[1] Counts I-III alleged defendant murdered Herlihy, while counts IV-XIII contained the additional allegation that defendant personally discharged the firearm which caused Herlihy's death. Counts III, VI, and IX alleged a theory of felony murder predicated on armed robbery (720 ILCS 5/9-1(a)(3) (West 2000)), while the remaining counts alleged defendant acted intentionally or knowingly (720 ILCS 5/9-1(a)(1) (West 2000)) or knowing that her acts created a strong probability of death or great bodily harm (720 ILCS 5/9-1(a)(2) (West 2000)).

¶ 5    At the plea hearing on September 30, 2003, defense counsel stated the parties and the trial court had participated in a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 1997), and that an agreement had been reached. Counsel noted that, based upon the evidence that would be presented regarding the offense and defendant's background, the court stated it would sentence her to 35 years' imprisonment in exchange for her guilty plea on count I of the indictment. Additionally, the State agreed to dismiss the remaining counts.

---

[1] James Armwood was also charged in the same indictment with first degree murder. He is not a party to this appeal.

¶ 6    After defense counsel stated defendant was prepared to plead guilty pursuant to the agreement, the court asked defendant whether she understood the terms of the plea agreement, her right to plead not guilty, the difference between a bench and jury trial, and by pleading guilty, she was waiving her right to a bench or jury trial. Defendant answered affirmatively. She also stated she understood that, by pleading guilty, she was waiving her right to have the State prove her guilt, cross-examine the State's witnesses, and present evidence in her defense.

¶ 7    The court then admonished defendant regarding the possible penalties she faced if convicted of first degree murder, specifically that she faced 20 to 60 years in prison, "[m]urder is a special category of crime for which [she would] not get day for day credit," she would "do the entire amount of the sentence," and she would receive a three-year term of mandatory supervised release (MSR) following her sentence. Defendant again stated she understood. The court asked defendant whether any promises had been made to cause her to plead guilty or whether anybody had threatened or coerced her to plead guilty. Defendant answered in the negative and confirmed she was pleading guilty by her own free will. At the end of the colloquy, defendant twice stated she understood everything she had just been told.

¶ 8    The Assistant State's Attorney (ASA) offered a correction as to the possible sentencing range, namely that defendant was ineligible for the death penalty but could receive 85 years to life imprisonment because certain counts of the indictment alleged she personally discharged the firearm which caused Herlihy's death. The ASA then recited the factual basis for the plea. If the matter proceeded to trial, Detectives Eddie Lewis and Nick Rucy would testify they were assigned to investigate Herlihy's death and spoke with James Armwood and defendant. On May 3, 2001, defendant waived her *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and gave a

videotaped statement. In her statement, she admitted that, on July 30, 2000, she and Armwood traveled to the north side of Chicago for the purpose of finding someone to rob so defendant could obtain money to bond her boyfriend out of jail and brought along with them a firearm. They eventually found Herlihy and decided to rob her. Armwood handed defendant the firearm, and the pair followed Herlihy to the 6400 block of North Wayne Avenue. Defendant approached Herlihy, pointed the firearm at her, and demanded her belongings. When Herlihy turned to face defendant, the firearm discharged, striking Herlihy in the chest. Defendant then took Herlihy's purse, ran a short distance, and she and Armwood removed perfume and currency from the purse.

¶ 9      The State then stated it would call a deputy medical examiner to testify. Defense counsel interrupted the proceedings, stating, "Judge, can [defendant] sit down[?] She is feeling ill." The court responded, "give her a chair," and the proceedings continued. The State explained the deputy medical examiner would testify he performed the autopsy on Herlihy and would opine the cause of her death was a gunshot wound to the chest and the manner of her death was homicide.

¶ 10     Defense counsel stipulated to the State's presentation. The following colloquy then occurred:

>               "THE COURT: You have heard the facts indicated in Court?
>
>               THE DEFENDANT: Yes.
>
>               [ASA]: Are those facts correct to the best of your knowledge?
>
>               THE DEFENDANT: Yes."

The court accepted defendant's guilty plea, finding it had been made "freely and voluntarily" and was supported by the factual basis.

¶ 11    The matter immediately proceeded to sentencing, and the court asked the parties whether they had anything to add to what it had heard at the Rule 402(d) conference. Relevant here, defense counsel told the court defendant had written a letter which expressed remorse and asked the court for mercy. The court stated it had read the letter and asked defendant whether she wished to say anything else. Defendant stated she was "sorry for what happened."

¶ 12    The court, in accord with its recommendation at the Rule 402(d) conference, sentenced defendant to 35 years' imprisonment, and the remaining charges were dismissed. The court admonished defendant regarding her appeal rights in accordance with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), including that, if she withdrew her plea, the State could proceed on all charges and she could receive the maximum sentence of 85 years to life imprisonment. Defendant stated she understood.

¶ 13    In September 2016, defendant filed a petition under the Act, wherein she raised three claims, two of which are relevant to this appeal. First, she asserted that plea counsel was ineffective. In support, she alleged, in relevant part, plea counsel erroneously advised she would only have to serve 50% of her sentence notwithstanding that, at the time of her plea, the law required her to serve 100% of the sentence. She contended that, had she known she would be required to serve her entire sentence, she "would have went to trial" given the indictment did not allege facts supporting "a charge or conviction of [f]irst [d]egree [m]urder." She further asserted she did not willingly or knowingly accept the plea because she understood she would only serve 50% of her sentence.

¶ 14    Second, defendant alleged the trial court "displayed misconduct" in completing the plea proceedings "when it was made clear that [she] was ill." She alleged that, during the plea hearing,

she was "visibly disoriented" to the point her plea counsel held her up before she fell to the floor and asked the court if defendant could sit. She alleged she "vaguely remember[ed]" the hearing and that her counsel "coached" her by "whispering 'yes' or 'no,' for [her] to repeat once she was seated." She maintained she was "incoherent" and unable to understand the entirety of the agreement. She further alleged the court failed to verify with her or her counsel whether she was competent after "fainting ill," and she "literally was a fly on the wall at her own sentencing[,] [u]nable to competently cooperate or understand the process."

¶ 15    Defendant did not sign her petition or verify its contents by affidavit. However, defendant attached to her petition two of her affidavits. The first stated:

> "On September 24, 2003 my attorney *** did not tell me that I'd be serving 35 years at 100%. He came to the bull pin [*sic*] I was being held at Cook County Jail and told me that I had been offered 35 years. I asked, 'Well, could you at least get me less? 30 or possibly 20?' [Counsel] then said, 'Naw, they're not ganna go down.' I said, 'What about trial?' [Counsel] said, 'You need to take the time because you'll get more if you go to trial' After sighing and looking to the floor, [counsel] said, 'You shouldn't be worried, you won't even have to do all that time. You'll have to do 50%.' After being told this information, I said I'd take the plea which was supposed to be on the 29 of September of 2003, however due to electricity issues the hearing was postponed until the next day 9/30/2003."

¶ 16    In the second affidavit, defendant set forth the circumstances of the shooting, which was consistent with the factual basis read at the plea hearing, but asserted the shooting was accidental.

¶ 17    In November 2016, the circuit court entered a written order dismissing defendant's petition as frivolous and patently without merit. This appeal followed.

¶ 18    On appeal, defendant contends the circuit court erred by summarily dismissing her petition where it set forth arguable claims that (1) her guilty plea was involuntary and the court failed to substantially comply with the requirement in Illinois Supreme Court Rule 402(b) (eff. July 1, 1997), that it ensure her plea was voluntarily entered, and (2) she received ineffective assistance of plea counsel, where counsel affirmatively misadvised her with respect to the good-time credit she was entitled to receive and "coached" her through the plea hearing.

¶ 19    As an initial matter, we must address the State's argument that defendant failed to provide a sufficient record to review her claims of error because the record lacks a certified report of proceedings for the September 2003 plea hearing at which defendant alleges her constitutional rights were violated, or a report of other pretrial proceedings. The State, relying on Illinois Supreme Court Rules 321 (eff. Feb. 1, 1994) and 323 (eff. July 1, 2017), argues defendant's failure to include the transcript in the report of proceedings renders the record deficient. Because the record is deficient, the State argues, we must presume the circuit court's order conformed with the law and had a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 20    The State is correct that defendant failed to include in the record a certified copy of the report of proceedings from the September 2003 plea hearing. See Ill. S. Ct. R. 321 (eff. Feb. 1, 1994) (the record on appeal shall contain a report of proceedings prepared in accordance with Rule 323); Ill. S. Ct. R. 323(a) (eff. July 1, 2017) (report of proceedings may include, *inter alia*, any proceeding that the party submitting it desires to have incorporated in the record on appeal and shall include all the evidence pertinent to the issues on appeal). However, defendant's failure has not inhibited our ability to review her claims because she attached to her postconviction petition a copy of the transcript of the plea hearing, which is in the record. The transcript is not irregular on

its face and it contains a certification from the court reporter stating it is true and correct. Further, the State does not dispute the accuracy of the transcript and both parties rely extensively on the transcript throughout their briefs. Accordingly, while we do not condone defendant's failure to include in the record the report of proceedings from the plea hearing, we reject the State's argument that the absence of a certified copy of the report of proceedings aside from what is included with defendant's postconviction petition requires us to affirm the circuit court's judgment.

¶ 21 The Act sets forth a procedure under which a criminal defendant can assert her conviction resulted from a substantial denial of her rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act contemplates a three-stage proceeding, which is initiated by the filing of a petition. *Id.* at 9-10; 725 ILCS 5/122-1(b) (West 2016). At the first stage, the circuit court determines whether, taking all well-pleaded facts in the petition and supporting materials as true, the petition states the gist of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 22 The court must dismiss the petition if it is frivolous and patently without merit. *Id.* A petition is frivolous and patently without merit where it has no arguable basis in law or in fact. *Hodges*, 234 Ill. 2d at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* Indisputably meritless legal theories are those which are completely contradicted by the record. *Id.* Fanciful factual allegations are those which are clearly baseless, fantastic, or delusional. *Id.* at 13, 17.

¶ 23 The Act requires a defendant to clearly set forth in the petition the respects in which her constitutional rights were violated and attach affidavits, records, or other evidence to support the

allegations or state why the same is not attached. 725 ILCS 5/122-2 (West 2016). The "gist" standard is a low threshold, and a *pro se* petitioner need only present a limited amount of detail and need not set forth legal argument or cite to authority. *Hodges*, 234 Ill. 2d at 9. However, a limited amount of detail does not mean the defendant is excused from providing any factual detail at all surrounding the alleged constitutional deprivations. *People v. Delton*, 227 Ill. 2d 247, 254 (2008). The purpose of the requirement that petitions include affidavits, records, or other evidence is to ensure that the claims are capable of objective or independent corroboration. *Id.* The attachments to the petition "must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *Id.* "Thus, while a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Id.* at 254-55. The failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a petition and by itself justifies summary dismissal at the first stage. *Id.* at 255.

¶ 24    We review *de novo* first-stage dismissals under the Act. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). Accordingly, we review the circuit court's judgment and not its reasoning, and we may affirm the judgment on any basis supported by the record. *People v. Knapp*, 2019 IL App (2d) 160162, ¶ 37.

¶ 25    Before addressing defendant's contentions, we observe that, although the State has not argued forfeiture, defendant arguably forfeited the claims contained in her *pro se* petition as a result of her failure to file a postplea motion pursuant to Illinois Supreme Court Rule 604(d) (eff.

Nov. 1, 2000), where the facts underlying her claims were known to her within the time for filing such a motion.

¶ 26    In this case, however, by failing to argue defendant forfeited her claims, the State forfeited any forfeiture argument. *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000). Additionally, the forfeiture rule is a rule of administrative convenience and does not absolutely bar the review of procedurally defaulted claims. *People v. Moore*, 177 Ill. 2d 421, 427 (1997). Moreover, this district generally follows *People v. Miranda*, 329 Ill. App. 3d 837, 841 (2002), wherein we held the failure to file a Rule 604(d) motion did not result in forfeiture of claims in proceedings under the Act because "Rule 604(d) does not apply in post-conviction proceedings." But see *People v. Vilces*, 321 Ill. App. 3d 937, 941-42 (2001). Accordingly, we will proceed to the merits of defendant's claims.

¶ 27    Defendant first contends her petition set forth the gist of a claim that her plea was not voluntary. She further argues the trial court failed to substantially comply with its duty to ensure her plea was voluntarily entered where, after plea counsel informed the court she was ill, the court failed to inquire into the nature of her illness or its effect on her ability to understand the proceedings.

¶ 28    The due process clause requires that a guilty plea be both knowing and voluntary. *People v. Williams*, 188 Ill. 2d 365, 370 (1999). A plea is knowing and voluntary where the defendant understands the nature of the charge, the minimum and maximum sentences she faces, the right to plead guilty or not guilty, the rights that are waived by pleading guilty, and where it is not obtained by force, threat, or promise apart from the agreement. *People v. Bryant*, 2016 IL App (5th) 140334, ¶ 36. Illinois Supreme Court Rule 402 was adopted to ensure compliance with this constitutional

mandate. *Id.* It states, in relevant part, "[t]he court shall not accept a plea of guilty without first determining that the plea is voluntary." Ill. S. Ct. R. 402(b) (eff. July 1, 1997). To do so, the court must question the defendant "personally in open court," confirm the terms of the agreement, and determine whether "any force or threats or any promises, apart from the plea agreement, were used to obtain the plea." *Id.*

¶ 29    After reviewing the record, we find the circuit court did not err in dismissing defendant's petition because it was rendered deficient by the lack of affidavit, record, or other evidence to support her claim that her plea was involuntary. The sole objective evidence defendant attached to her petition was the plea transcript which shows only that counsel stated that defendant felt ill during the proceedings and the trial court, at counsel's request, let defendant sit. Indeed, though defendant attached her two affidavits to her petition, she failed to present anything that corroborated her unverified allegation that she was unable to understand the proceedings. The failure to attach any independent evidence, through affidavit, record, or other evidence, to her petition or explain its absence was fatal and alone justified summary dismissal. *Delton*, 227 Ill. 2d at 255.

¶ 30    Further, the record belies defendant's assertion that she was incoherent during the entire proceeding. Before her plea, defendant appropriately responded to the trial court's questioning. At the sentencing hearing, which immediately followed the plea colloquy, the court indicated it had read a letter submitted by defendant and asked defendant whether she wanted to say anything further. She responded, "I am sorry for what happened." Thus, the record establishes that she could understand the court's question to her and make an appropriate response, rebutting her claim that

she was unable to understand the proceedings. Accordingly, we conclude defendant's petition failed to state the gist of a claim that her plea was not voluntary.

¶ 31    For this same reason, we conclude defendant failed to state the gist of a claim that the trial court failed to comply with its duty to ensure her plea was voluntary before accepting it. Defendant simply provided no evidence capable of independent or objective corroboration that the court was aware her illness had rendered her incapable of understanding the proceedings. Moreover, based on defendant's participation at the sentencing hearing, during which she made an appropriate response on her own volition, the record rebuts any claim that the court had reason to believe she was incapable of understanding the proceedings.

¶ 32    Defendant next contends she was denied her right to the effective assistance of counsel at her plea hearing where her counsel (1) "coached" her through the plea hearing, and (2) misadvised her regarding her eligibility for day-for-day good-conduct credit.

¶ 33    To prevail on a claim of ineffective assistance, a defendant must show her counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). "The *Strickland* standard also applies to a claim that trial counsel was ineffective during the guilty-plea process." *People v. Brown*, 2017 IL 121681, ¶ 26 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). The first prong of the analysis is the same for guilty-plea defendants. *Brown*, 2017 IL 121681, ¶ 26. However, the second prong of the analysis requires the defendant to show a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and instead would have insisted on going to trial. *Id.* " 'A conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to

establish prejudice' for purposes of an ineffectiveness claim." *Id.* (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29)). "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 34    Defendant contends her counsel, by "coaching" her answers during the plea hearing, prevented the trial court from learning the extent of her illness and its effect on her ability to understand the consequences of her plea. She argues this allegation, standing alone, constitutes a claim of ineffective assistance and, therefore, warrants reversal for second-stage proceedings. We disagree.

¶ 35    As noted, the Act requires that petitions be supported with affidavits, records, or other evidence or state why such evidence is not attached. 725 ILCS 5/122-2 (West 2016); *People v. Collins*, 202 Ill. 2d 59, 65 (2002). Where a defendant alleges ineffective assistance of counsel, a defendant need not comply with this requirement "where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than [her] own sworn statement, was that of [her] attorney." *People v. Hall*, 217 Ill. 2d 324, 333 (2005). A postconviction petition must nevertheless supply a sufficient factual basis to show the allegations of the petition may be objectively or independently corroborated. *People v. Allen*, 2015 IL 113135, ¶ 24.

¶ 36    Defendant has not demonstrated a factual basis exists for her claim that plea counsel was ineffective where counsel prevented the trial court from learning the extent of her illness by coaching her answers during the plea hearing. Defendant's petition provided no evidence that counsel, or anyone else present during the hearing, was aware that her illness had rendered her incapable of understanding the proceedings and no evidence that her counsel "coached" her through the hearing. Rather, her claim rests entirely on the bald assertions that her illness rendered

her incompetent and counsel "coached" her, with no indication that either allegation is capable of objective or independent corroboration. See *Collins*, 202 Ill. 2d at 67.

¶ 37    Further, we note defendant never represented to the trial court that she was unable to understand the proceedings and instead stated she understood each of the court's admonitions. Additionally, defendant alleges counsel "coached" her answers during the guilty plea only once she was seated. The transcript of the proceedings shows that, at that point, defendant already confirmed that she understood the plea agreement and its consequences, the nature of the charge against her, the rights she was waiving as a result of her plea, and that she had not been forced, threatened, or promised anything for her plea. Thus, defendant has not demonstrated an arguable factual basis for her claim that counsel was deficient for allegedly "coach[ing]" her answers during the plea hearing.

¶ 38    Moreover, we find defendant has not raised an arguable claim of prejudice as a result of this purported deficiency. To show prejudice, defendant was required to assert a claim of innocence or a plausible defense that could have been raised at trial. *Hall*, 217 Ill. 2d at 335-36. Here, defendant did not claim she was innocent of the charges, but rather, that her act of shooting Herlihy was accidental, not intentional. Even if defendant presented evidence negating the required mental state required as a defense in these circumstances (*id.* at 336), the State also charged defendant under the felony murder rule predicated on armed robbery. Thus, at trial, the State would have been required to prove only that she intended to commit the armed robbery and that Herlihy died during the commission of that offense. 720 ILCS 5/9-1(a)(3) (West 2000); *People v. Brown*, 2015 IL App (1st) 131552, ¶ 32. As defendant admitted in her postarrest statement and in the affidavit

attached to her petition, she intended to rob Herlihy at gunpoint on the night of the murder. Accordingly, we conclude she has not raised an arguable claim of prejudice.

¶ 39    We are not persuaded by defendant's reliance on *People v. Maury*, 287 Ill. App. 3d 77 (1997), for the proposition that an allegation that counsel failed to ensure a defendant's plea was knowingly and intelligently entered alone warrants relief on a claim of ineffective assistance. There, this court merely recognized that counsel's failure to ensure a plea was knowingly and intelligently entered constituted deficient performance under *Strickland*. *Id.* at 81. In such a case, a defendant must still establish prejudice. *Id.* at 83. As discussed, defendant cannot make such a showing.

¶ 40    Defendant next contends her petition stated an arguable claim of ineffective assistance based on her counsel's "affirmative misadvice" regarding her eligibility for day-for-day good-conduct credit. Though the trial court admonished defendant that she was ineligible for any sentence credit and would serve the entire sentence after counsel allegedly misadvised her, she nevertheless argues she was prejudiced because she agreed to plead guilty under the misapprehension that she was eligible to earn day-for-day good-conduct credit.

¶ 41    In this context, to show prejudice, defendant was required to demonstrate it would have been rational under the circumstances to reject the plea bargain. *Brown*, 2017 IL 121681, ¶ 48. In making this determination, "it is appropriate to compare the consequences of defendant's conviction following a trial to the consequences of the defendant entering the guilty plea." *Id.* ¶ 36.

¶ 42    We conclude defendant's petition failed to raise an arguable claim of prejudice. See *Brown*, 2017 IL 121681, ¶ 26. The only allegations of prejudice in defendant's petition is that she would not have pleaded guilty and instead would have insisted on going to trial had she known and

understood the consequences of her guilty plea. This allegation was conclusory and insufficient to survive summary dismissal. See *People v. Tucek*, 2019 IL App (2d) 160788, ¶¶ 18-21. Rather, as *Brown* dictates, defendant was required to show it would have been rational under the circumstances to forgo a guilty plea and insist on a trial. Defendant makes no argument on this point in her brief and, therefore, has forfeited any contention that she established prejudice under this standard. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited."); *People v. Skillom*, 2017 IL App (2d) 150681, ¶ 24.

¶ 43    Further, we find defendant would be unable to make such a showing on this record. Defendant was charged with 13 counts of first degree murder, 10 of which alleged she personally discharged a firearm causing Herlihy's death. Proof of the allegation that defendant personally discharged a firearm causing Herlihy's death would have triggered a sentencing range of 45 years to life imprisonment, which exceeds the range of 20 to 60 years she faced on the count to which she pleaded guilty. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000) ("if during the commission of [first degree murder], the [defendant] personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment").

¶ 44    Had defendant proceeded to trial, the evidence of her guilt on those counts which carried the mandatory sentencing enhancement—much of which, according to the affidavit attached to her petition, defendant does not dispute—was overwhelming. Indeed, defendant admitted in a videotaped statement that she, along with Armwood, intended to rob someone and brought with them a firearm. In executing their plan, she and Armwood encountered Herlihy. Defendant by her own admission stalked Herlihy for a few blocks, eventually calling out to her and demanding her

purse. When Herlihy turned to face defendant, the weapon discharged, fatally striking Herlihy. On these facts, the trier of fact could have found defendant guilty of any of the 10 counts which carried the sentencing enhancement.

¶ 45    Even if, as defendant asserted in her petition and affidavit, the shooting were accidental, however, the State also charged defendant with two counts of felony murder that included an allegation she personally discharged the firearm causing Herlihy's death. To succeed on those counts, the State was not required to prove defendant intended to kill Herlihy, only that she intended to commit the armed robbery, which, as noted, is a fact she readily admitted in an affidavit attached to her petition. *Brown*, 2015 IL App (1st) 131552, ¶ 32 (the State need only prove intent to commit the underlying felony to sustain a conviction for felony murder).

¶ 46    Instead, defendant pleaded guilty to one count of first degree murder that omitted an allegation that she personally discharged a firearm in exchange for a 35-year prison sentence, which was 10 years fewer than the minimum exposure she faced had she been convicted of the charges which included the allegation. In other words, defendant obtained a 10-year sentencing concession in exchange for her plea. Under these circumstances, we conclude it would not have been rational for defendant to forgo a guilty plea and insist on a trial. See *Tucek*, 2019 IL App (2d) 160788, ¶¶ 20-21 (the defendant was unable to show prejudice where potential sentence after trial far exceeded that which he received under the plea agreement and where the defendant failed to set forth a plausible defense in his petition). Accordingly, defendant has failed to show a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and instead would have insisted on trial. As such, we conclude defendant's petition failed to set forth the gist of a claim that she was denied her right to the effective assistance of counsel.

¶ 47    Defendant's reliance on *People v. Boyd*, 2018 IL App (5th) 140556, is misplaced. In *Boyd*, the appellate court found on direct appeal that the defendant set forth more than a bare allegation that he would not have pleaded guilty and insisted on a trial. *Id.* ¶ 29. There, plea counsel testified at the hearing on the defendant's motion to withdraw his plea and corroborated the defendant's testimony that if he had known he was ineligible to receive credit for good conduct against his sentence, he would not have pled guilty. *Id.* ¶¶ 5, 29. Further, and critically, the court found the defendant had established it would have been rational to reject the plea had he known he was ineligible for credit, "especially considering the floor of his sentencing range was 12 years less than the 18-year sentence to which he agreed." *Id.*

¶ 48    In this case, the bare allegation of prejudice in defendant's petition is not corroborated by any evidence and she has failed to explain its absence. This alone justified the circuit court's dismissal of her petition. See *Delton*, 227 Ill. 2d at 255. Further, defendant received a substantial benefit in terms of her possible sentence—at least 10 years—as a result of her decision to plead guilty when the State dismissed the charges which alleged she personally discharged the firearm that caused Herlihy's death. See *Tucek*, 2019 IL App (2d) 160788, ¶¶ 20-21. Accordingly, defendant cannot establish it would have been rational to reject the plea.

¶ 49    In sum, defendant's petition failed to set forth the gist of a claim that her plea was not voluntary or that she was denied her right to the effective assistance of counsel. Accordingly, the circuit court properly dismissed her petition.

¶ 50    For the reasons stated, we affirm the circuit court's judgment.

¶ 51    Affirmed.