# Illinois Official Reports

## Appellate Court

---

### *People v. McDonald*, 2018 IL App (3d) 150507

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD A. McDONALD, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0507 |
| Filed<br>Modified upon denial<br>of rehearing | January 4, 2018<br><br>February 14, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, Nos. 12-CF-283, 12-CF-341; the Hon. Terence M. Patton and the Hon. Richard A. Zimmer, Judges, presiding. |
| Judgment | Judgment vacated.<br>Cause remanded with instructions. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Matthew Schutte, State's Attorney, of Cambridge (Patrick Delfino, Lawrence M. Bauer, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Lytton and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1       Defendant, Richard A. McDonald, appeals from the third-stage denial of his postconviction petition. He argues that third-stage counsel provided unreasonable assistance by failing to make an ineffective assistance of trial counsel argument at defendant's evidentiary hearing. We vacate the circuit court's judgment and remand for further proceedings.

¶ 2                               FACTS

¶ 3       The State charged defendant with two counts of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2012))—one felony count and one misdemeanor count—and two Class 4 felony counts of violation of an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2012)). On October 19, 2012, in exchange for the State dropping one of the violation charges, defendant pled guilty to the three remaining counts. The court admonished defendant regarding the potential sentences he faced, including that a four-year period of mandatory supervised release (MSR) would attach to the sentence for violating an order of protection. Defendant affirmed that he was not being coerced into pleading guilty, nor was he induced to do so by any unspoken promises. The circuit court accepted defendant's plea.

¶ 4       On December 26, 2012, the court sentenced defendant to an 18-month term of imprisonment on the felony criminal damage to property conviction, to be followed by a 1-year term of MSR. A term of 364 days in jail on the misdemeanor criminal damage to property conviction would run concurrently. The court imposed an 18-month term of imprisonment on the violation of an order of protection conviction, to be served consecutively to the other sentences and to be followed by a 4-year term of MSR. Defendant never pursued a direct appeal.

¶ 5       Defendant filed a *pro se* postconviction petition on July 30, 2014. In the petition and attached affidavit, defendant claimed that because he was indigent and a convicted sex offender, he would be required to serve his term of MSR in prison. He alleged that he was "not fully informed as to the consequences of his guilty plea." Defendant did not mention in his petition any potential remedy. The circuit court docketed defendant's petition and appointed James Cosby as counsel. Notably, Cosby was the same attorney that had represented defendant throughout his guilty plea.

¶ 6       On September 8, 2015, Cosby filed a certificate of compliance pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The same day, defendant filed a supplemental affidavit, in which he asserted:

> "I was not fully advised as to the consequences of my guilty plea. Specifically, I was not advised that as a registered sex offender, I would not be placed on [MSR] if I was indigent and homeless. Thus I was unaware that the 4 year [MSR] would extend my period of incarceration by 2 years."

¶ 7    The State filed a motion to dismiss defendant's petition on October 1, 2014, and a hearing on the matter was held later that month. At the hearing, the State argued that the Department of Corrections (DOC) is an agency distinct from the court and that it is the DOC that ultimately determines how an MSR term will be discharged. In his argument, Cosby compared the situation at hand to that in the Supreme Court case of *Padilla v. Kentucky*, 559 U.S. 356 (2010), a case in which the Court held that counsel had a duty to discuss potential deportation consequences with a defendant before pleading guilty. Cosby argued:

> "That is a situation where *** deportation is not a part of the sentence that an individual receives but is, in fact, still a possible consequence of that sentence, and because of that, the United States Supreme Court said it's up to the Court to admonish defendants of that possibility and it's up to defendant's counsel to also counsel the defendant as to that possibility, not just tell them that it's merely possible that they might be deported, but, in fact, try to, as best they can, tell them whether as a practical matter they will or will not be deported."

Cosby concluded that, as a remedy, defendant should be allowed to withdraw his plea. The State insisted that defendant had received all of the admonishments called for in Illinois Supreme Court Rule 402(a) (eff. July 1, 2012)) and cited a case that stood for the proposition that a defendant need not be admonished regarding truth in sentencing (*i.e.*, whether his sentence would run day-for-day or otherwise). Cosby responded:

> "[T]here's an argument even in that particular case that it's the obligation of the lawyer, not necessarily the Court, but the lawyer that's involved there to tell your client, 'Hey, you're pleading guilty to something that's a truth-in-sentencing case. You're going to serve 85 percent of that sentence.' So while it's not part of the Court's obligation, it's still, in my opinion, part of Defense Counsel's obligation."

¶ 8    After taking the matter under review, the circuit court denied the State's motion to dismiss, advancing defendant's petition to a third-stage evidentiary hearing. Cosby subsequently moved to withdraw as counsel, citing the probability that he would be called as a witness. The court granted Cosby's motion and appointed Edward Woller to represent defendant. The State, in turn, filed a response to defendant's petition. Woller did not file an amended petition.

¶ 9    At the evidentiary hearing, Woller called no witnesses, proceeding only by argument. In his argument, Woller also invoked the *Padilla* decision, asserting that the Supreme Court "ruled you had to admonish a defendant, when he pled, of the consequences of a plea of guilty, that is, deportation." Woller continued: "[S]omeone should have thought to tell [defendant], 'Now, you've got to have a residence that's suitable when you get out, or you're just going to go right back in.' " He concluded:

> "So in summary I'm going to argue it's a direct consequence of his plea, that he wasn't admonished that without a suitable address, once he hit MSR, it would trigger he would go right back into prison, and he was, in effect, sentenced to more time in prison than he realized ***."

¶ 10    The State called Cosby as its only witness. Cosby testified that prior to defendant's guilty plea, he was aware that defendant was a registered sex offender. Cosby talked to defendant about the potential sentences he faced, including terms of MSR, but did not recall any conversation regarding whether defendant had a suitable address for release for his period of MSR. The following colloquy ensued:

> "[STATE]: *** While [defendant] was in the [DOC], he had his *** place for [MSR] disappear. His father passed away, didn't he[?]
>
> [COSBY]: That's my understanding, yes.
>
> [STATE]: So even if you had these conversations and his father's house was appropriate at that point, his father passed away when he was in DOC.
>
> [COSBY]: That's my understanding, yes."

On cross-examination, Cosby reiterated that he had not had a conversation with defendant before his guilty plea regarding the necessity of having a suitable residence for MSR or the possibility of serving that time in prison. However, Cosby was certain he had spoken to defendant about those issues "after the fact." Cosby concluded, "[I]n all honesty, it was my belief that he did have a place to go."

¶ 11    In closing arguments, Woller contended that the list of admonishments found in Rule 402 is not exhaustive and again asserted that defendant's "plea was involuntary because he didn't get sufficient admonishments." The court denied defendant's petition.

¶ 12                                  ANALYSIS

¶ 13                                 I. Standing

¶ 14    Before proceeding to a potential analysis of the merits of defendant's appeal, we first note that defendant has been fully released from DOC custody during the pendency of this appeal. That is, he has been released from prison with his MSR term completely discharged. Accordingly, we must first consider whether defendant would have standing to continue to pursue his constitutional claims.

¶ 15    Initially, we note that the parties in this case—and other courts addressing similar issues—use the terms "standing" and "mootness" in reference to the same general principles. Black defines "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1625 (10th ed. 2014). A defendant's right to collaterally attack his conviction on constitutional grounds is provided by the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2014); *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 17 ("The Act is a creature of statute and all rights derive only from the statute."). "An appeal is moot if no controversy exists or if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party." *In re Shelby R.*, 2013 IL 114994, ¶ 15.

¶ 16    Defendant's requested remedy is the remand of his case to the circuit court for a new third-stage evidentiary hearing. The issue thus turns on defendant's ability to pursue his postconviction claims in the circuit court. If we find that defendant would no longer have standing to pursue those claims under the Act, then this appeal would be moot, as we would be foreclosed from granting effectual relief. Even if we did remand the matter, the circuit court would immediately dismiss defendant's petition for lack of standing. The threshold issue, therefore, is a question of defendant's standing.

¶ 17    The Act provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article" if they assert a substantial denial of their constitutional rights in the proceeding that led to their conviction. 725 ILCS 5/122-1(a)(1) (West 2014). This lone clause is the extent of the Act's explicit mention of who may resort to the Act. Our supreme court, for its part, has held that persons who have been released from the penitentiary but are

- 4 -

still in DOC custody in the form of an MSR term may still file postconviction petitions. *E.g.*, *People v. Pack*, 224 Ill. 2d 144, 150-51 (2007).

¶ 18    Defendant in the present case was unquestionably in custody at the time he filed his postconviction petition. Thus, this appeal calls this court to determine whether the "imprisoned in the penitentiary" requirement of the Act is a limitation only upon the *filing* of a postconviction petition or a limitation upon the receipt of *relief* under the Act. That is, must a defendant be in custody at the time relief would be granted in order to be eligible for that relief?

¶ 19    The central rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *People v. Wooddell*, 219 Ill. 2d 166, 170 (2006). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." *Id.* at 170-71. To be sure, the plain language of the Act refers to the commencement of proceedings, holding that one must be in custody to "institute proceeding[s]." The Act is silent as to any requirements for the receipt of relief. "When a statute is silent on a particular point, we focus on the legislature's intent, and we will not interpret statutory silence in a way that defeats the purpose of that provision." *People v. Fiveash*, 2015 IL 117669, ¶ 34.

¶ 20    Here, the legislature's silence on the issue can be interpreted in conflicting ways. See *Burns v. United States*, 501 U.S. 129, 136 (1991) ("In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective. An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."). Our supreme court, for its part, has repeatedly referenced the legislature's intent with regard to the act, consistently and assuredly casting the custody requirement in terms of relief. In *People v. Dale*, 406 Ill. 238, 246 (1950), *overruled in part on other grounds by People v. Warr*, 54 Ill. 2d 487 (1973), the court wrote:

> "The legislature, by the act in question, no doubt intended to draw a distinction between convictions for minor offenses and those for serious crimes, and to make the *remedy* available only to persons actually being deprived of their liberty and not to persons who had served their sentences and who might wish to purge their records of past convictions." (Emphasis added.)

The court has cited that precise language from *Dale* numerous times, most recently in 2010. See *People v. Carrera*, 239 Ill. 2d 241, 245-46 (2010) (citing *Dale* for the proposition that "only those whose liberty was actually restrained were entitled to the protection afforded by the Act"); see also *Pack*, 224 Ill. 2d at 150.

¶ 21    Relatedly, the court has also consistently pointed to liberty interests as the defining aspect of the Act. *E.g.*, *Pack*, 224 Ill. 2d at 150 ("A review of the history of the Act and our construction of the term 'imprisoned' reveals that courts in this state have always held a defendant's liberty interest to be paramount when construing the Act."); *People v. Martin-Trigona*, 111 Ill. 2d 295, 301 (1986) ("*Relief is available* under the Act to all persons *whose liberty is constrained* by virtue of a criminal conviction ***." (Emphases added.)). Notably, the *Martin-Trigona* court discussed the custody requirement not in terms of who may

*file* a petition, but who may "*maintain* such petitions under the Act."[1] (Emphasis added.) *Martin-Trigona*, 111 Ill. 2d at 299. The language employed by the supreme court in these cases clearly militates against a finding of standing for defendant here. Defendant's liberty is not currently constrained; the Act's intended relief—the release from custody—is not available to him. At this point, defendant is proceeding only in an attempt to purge his record of his conviction.[2]

¶ 22    Our supreme court has, however, directly addressed the present issue—on a single occasion. In *People v. Davis*, 39 Ill. 2d 325, 328-29 (1968), the court held that a defendant who filed his postconviction petition while in custody, but who was released from custody prior to disposition of the petition, was entitled to relief. *Davis* stands in stark contrast to the cases listed above not only for its outcome, but also for its reasoning. In finding standing, the court held:

> "As there are obvious advantages in purging oneself of the stigma and disabilities which attend a criminal conviction, we see no reason to so narrowly construe this remedial statute as to preclude the remedy in every case in which the petition is not filed and the hearing completed before imprisonment ends." *Id.* at 329.

Thus, the court found standing based upon the advantages of purging a conviction from one's record, seemingly in direct conflict with the language in *Dale*. Yet, if *Davis* was meant to implicitly overrule *Dale*, *Dale* has survived, as the court cites that precise language with approval to this day. Even more curiously, the court has cited *Dale* and *Davis* approvingly in the same case. See *Carrera*, 239 Ill. 2d at 245-26.

¶ 23    We are presented with a silent statute and a direct conflict between our supreme court's words in cases such as *Dale*, *Carrera*, and *Martin-Trigona*, and its actions in *Davis*.[3] While the court's employment of the *Dale* language has been consistent and forceful, *Davis* has never been explicitly overruled and remains good law. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009) ("The appellate court lacks authority to overrule decisions of this court, which are

---

[1]To be clear, the *Martin-Trigona* defendant was released on an appeal bond and was awaiting resentencing when he filed his petition—a situation factually dissimilar to defendant in the present case—and the court found that he *did* have standing to maintain the petition. We cite cases such as *Martin-Trigona* and *Pack* not for their holdings but only as examples of the language our supreme court has employed in describing the Act.

[2]We do not question that the removal of a criminal conviction from one's record can be valuable for myriad reasons. We only question whether the Act is the proper vehicle for such relief, as opposed to a petition brought under section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2016). Further, it should be noted that the relief defendant seeks through his postconviction petition is not outright reversal of his conviction but the withdrawal of his guilty plea. Thus, should defendant ultimately prevail on his petition and be allowed to withdraw his plea, the State would be free to retry him. Rather than secure his release from custody, defendant may be utilizing the Act to return to custody.

[3]To be sure, there are also practical concerns attending this decision. For example, we are aware of the procedural delays inherent in a three-stage postconviction process, especially where an appeal may be had following each of the three stages. If a defendant must be in custody to earn relief, these delays increase the likelihood that he may serve the entirety of his sentence before such relief may be had. Nevertheless, we are also aware that such practical considerations must take a back seat to matters of legislative intent and supreme court precedent.

binding on all lower courts."). Further, in the absence of a clear legislative intent, the rule of lenity dictates that criminal statutes generally be construed in favor of a defendant. See *People v. Gutman*, 2011 IL 110338, ¶ 12. Accordingly, we find that a defendant who timely files his postconviction petition while in custody is eligible for relief under the Act, regardless of whether he is released from custody in the intervening time.

## II. Unreasonable Assistance of Counsel

On appeal, defendant contends that postconviction counsel provided unreasonable assistance at the third-stage evidentiary hearing. Specifically, defendant maintains that Woller was unreasonable in failing to amend the petition to include the argument that plea counsel had provided ineffective assistance for not informing defendant of the potential of serving his MSR term in prison.

The right to counsel at the second and third stages of postconviction proceedings is not constitutional in nature but wholly statutory. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The Act provides that defendants are entitled to a " 'reasonable' level of assistance." *People v. Flores*, 153 Ill. 2d 264, 276 (1992) (quoting *People v. Wright*, 149 Ill. 2d 36, 64 (1992)). "The evident legislative purpose in requiring counsel for the indigent petitioner and permitting amendment of the petition is to provide a means whereby a petitioner with meritorious post-conviction claims will have the assistance of counsel in drafting a legally sufficient petition or amendments thereto." *People v. Polansky*, 39 Ill. 2d 84, 87 (1968); see also *People v. King*, 39 Ill. 2d 295, 297 (1968) (describing the purpose of postconviction counsel as "to insure that if the petitioner has any constitutional claims of merit they will be properly recognized, developed and articulated in the post-conviction proceedings").

The duties of postconviction counsel are set forth in part in Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). That rule provides:

> "The record filed in [the appellate] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." *Id.*

While there is no duty that a defendant's claim *must* be amended, the rule clearly provides that an amendment must be made if it is necessary for an adequate presentation of claims. *People v. Turner*, 187 Ill. 2d 406, 412 (1999); see also *People v. Johnson*, 154 Ill. 2d 227, 238 (1993) (holding that postconviction counsel must shape petitioner's complaints in a *pro se* petition into "appropriate legal form"). Where counsel fails to make necessary amendments, his or her performance is unreasonable, and remand for further proceedings is the remedy. *Turner*, 187 Ill. 2d at 414, 417.

In his *pro se* petition, defendant simply alleged that he was "not fully informed as to the consequences of his guilty plea" relating to the potential that he would have to serve his MSR term in prison. Of course, that allegation alone did not and does not constitute a cognizable claim. It did, however, state enough of a "gist" of a constitutional claim to proceed to the second stage. See *People v. Porter*, 122 Ill. 2d 64, 73 (1988). To shape defendant's claim into "appropriate legal form," one would need to eliminate the passive voice and direct the error at a certain entity. That is, either defendant's due process rights were violated by the court's

failure to admonish him of the potential of being violated at the door[4] (*e.g.*, *People v. Whitfield*, 217 Ill. 2d 177 (2005)) or his right to effective assistance of counsel was violated where counsel failed to inform him of that possibility (*e.g.*, *People v. Pugh*, 157 Ill. 2d 1 (1993)). In either case, defendant would also have to show prejudice, that but for either the court or counsel's failure, he would not have pled guilty. *Id.* at 15; *People v. Snyder*, 2011 IL 111382, ¶ 32.

¶ 29 In the present case, neither of the two attorneys who represented defendant filed an amended petition. Cosby, for his part, did shape defendant's claim into one of ineffective assistance of counsel while arguing at the second-stage hearing. Both explicitly and by analogizing to *Padilla*—a case fundamentally concerning the duties counsel owes to a defendant who pleads guilty—Cosby transformed defendant's *pro se* claim from a vague assertion of lack of knowledge to a claim that defendant's right to counsel had been violated and that his plea was thus involuntary. However, Cosby never put that argument into an amended petition. After the court advanced defendant's petition to the third stage, Cosby, as he had essentially asserted his own ineffectiveness at that point, withdrew from the case.

¶ 30 Woller also failed to file an amended petition shaping defendant's claim into a legally sufficient argument. At the third-stage evidentiary hearing, Woller diverted from the position Cosby had taken orally at the second-stage hearing, arguing only that the circuit court should have admonished defendant differently. Moreover, Woller did not present any assertion—either through factual allegations in an amended petition, affidavit, calling defendant as a witness, or argument in the third-stage evidentiary hearing—that defendant would not have pled guilty but for the faulty admonishments. A showing of prejudice was necessary for defendant to prevail on *any* claim. If Woller instead believed defendant would have pled guilty regardless of whether anyone had informed him of the possibility of being violated at the door, Woller should have moved to withdraw, as there would be no meritorious positions to take on defendant's petition.

¶ 31 In sum, defendant's *pro se* postconviction petition stated the gist of a constitutional claim, such that it warranted second-stage proceedings. The *pro se* petition, however, did not state a legally sufficient claim and therefore required amendment by counsel so that such a claim could be formed. Neither of defendant's two appointed postconviction attorneys filed an amended petition. As such, defendant received unreasonable assistance of postconviction counsel. *Turner*, 187 Ill. 2d at 412. Accordingly, we vacate the circuit court's denial of defendant's petition and remand with instructions that counsel file an amended petition in advance of a new third-stage evidentiary hearing.

¶ 32 Defendant argues that appointed counsel on remand should amend the petition specifically to make the claim of ineffective assistance of counsel rather than a claim of faulty admonishments. To be sure, this case is unique in that separate appointed attorneys represented defendant at second- and third-stage proceedings. Ordinarily, there would be no question that a

---

[4]" 'Violating an offender at the door is a legal fiction wherein it is imagined that the offender is released from custody, placed on MSR, but when he leaves the institution he is in violation of his supervision terms and he is immediately placed back in custody. In reality, the offender simply remains incarcerated until a MSR prerequisite is satisfied. This can continue until either (1) the term of MSR expires, or (2) the prerequisite is satisfied.' " *Cordrey v. Prison Review Board*, 2014 IL 117155, ¶ 9 (quoting *Armato v. Grounds*, 944 F. Supp. 2d 627, 631 n.3 (C.D. Ill. 2013)).

successful claim made at second-stage proceedings would be made again at the third stage. While it is unclear whether there is a legal *duty* for new counsel at the third stage to advance the successful second-stage argument, that is nevertheless the far more prudent course. In general, the advancement from the second stage is at least a partial endorsement of the merit of a particular claim. In this particular case, the alternative argument that Woller raised at the third stage—that the circuit court should have admonished defendant about the possibility of being violated at the door—is the type of argument that has been rejected by our supreme court. See *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009) (holding that circuit court need only advise pleading defendant of the direct consequences of the plea). On the other hand, cases such as *Padilla* at least seem to leave open the possibility that *counsel* might have a duty to advise a defendant about that possibility.

¶ 33　　The State argues that even a claim of ineffective assistance of counsel would be meritless, positing that postconviction counsel thus could not have been unreasonable for failing to bring a meritless claim. However, where postconviction counsel is derelict in his or her duty to amend the *pro se* petition, remand is required " '*regardless* of whether the claims raised in the petition had merit.' " (Emphasis in original.) *People v. Jones*, 2016 IL App (3d) 140094, ¶ 33 (quoting *Suarez*, 224 Ill. 2d at 47). Thus, we do not address the State's arguments relating to the merits of defendant's underlying claim. We do note that the State's bald assertion that counsel cannot be ineffective for failing to advise a client about the possibility of being violated at the door is not well-taken. First, it appears that issue has never been decided by an Illinois court. Moreover, defendant in the present case was told he faced a maximum term of three years' imprisonment (the maximum for a Class 4 felony), when in fact he faced the possibility of spending up to seven years in prison because of his status as a sex offender. That defense counsel would have a duty to inform a defendant that he may actually spend more than twice as much time in prison seems at the very least arguably meritorious.

¶ 34　　　　　　　　　　　　　　　　　　CONCLUSION

¶ 35　　The judgment of the circuit court of Henry County is vacated and the matter is remanded with instructions.

¶ 36　　Judgment vacated.

¶ 37　　Cause remanded with instructions.