# Illinois Official Reports

## Appellate Court

---

### *People v. Tucek*, 2019 IL App (2d) 160788

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN TUCEK, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0788 |
| Filed | January 16, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-CF-1779; the Hon. Mark A. Pheanis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, David J. Robinson, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Zenoff and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Kevin Tucek, appeals the summary dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant's petition did not show even the gist of a meritorious assertion that he was prejudiced by trial counsel's alleged defective performance. Thus, we affirm.

¶ 2                                              I. BACKGROUND

¶ 3        Defendant was charged with one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), a Class X felony with a sentencing range of 6 to 60 years' imprisonment (*id.* § 11-1.40(b)(1)). As amended, the indictment alleged that, "on or about August 1, 2009[,] and March 1, 2012," defendant inserted his finger into the vagina of H.T., who was under 13 years old at the time.

¶ 4        On January 17, 2014, the State filed a notice of its intent to introduce statements that H.T. made (see 725 ILCS 5/115-10 (West 2012)) on four separate occasions to four different people, including an investigator with the Kane County Children's Advocacy Center and an investigator with the Du Page County Children's Advocacy Center. On February 20, 2014, the State moved *in limine* to admit evidence that defendant had committed a separate illegal sexual act against H.T. (see *id.* § 115-7.3). The notice and the motion were not heard or ruled upon, as the parties reached a plea agreement.

¶ 5        On November 20, 2014, the parties presented the agreement. Defendant would plead guilty to criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2012)), a Class 1 felony (*id.* § 11-1.20(b)(1)) with a sentencing range of 4 to 15 years' imprisonment (730 ILCS 5/5-4.5-30(a) (West 2012)), and the State would recommend a sentence of 8 years, to run concurrently with defendant's sentence in a Will County case. Defendant would be required for life to register as a sex offender (see 730 ILCS 150/1 *et seq.* (West 2012)). Also, after he finished his sentence, he would serve a term of mandatory supervised release (MSR) of no less than three years and as much as life (see 730 ILCS 5/5-8-1(d)(4) (West 2012)).

¶ 6        The trial court admonished defendant and asked him whether he understood the potential penalties, including MSR. Defendant said that he did and wished to persist in his plea.

¶ 7        The State presented the factual basis for the plea. Between August 1, 2009, and March 1, 2012, defendant and H.T. were residing with her mother. In interviews, H.T. stated the following. She was asleep in the living room but awoke because she felt rubbing on her vagina. She saw defendant's face and realized that his finger was in her vagina. She jumped up, pulled up her underwear and pants, and told defendant that she was going to tell her mother what had happened. He said not to tell. She did not tell her mother until sometime afterward.

¶ 8        The trial court admonished defendant that he would not receive day-for-day good-conduct credit but would have to serve 85% of his sentence. Defendant said that he understood. The court told him that the MSR term that followed "could be for as little as three but up to the rest of [defendant's] life." Defendant said that he understood. He also said that he knew that he would have to register as a sex offender. However, he had been unaware that, at the end of his prison term, the State could petition to commit him as a sexually violent person (see 725 ILCS 207/1 *et seq.* (West 2012)). The court explained this possibility and allowed defendant to

discuss it with his attorney. Defendant then told the court that he understood and wished to plead guilty.

¶ 9 The court accepted defendant's plea and sentenced him accordingly. Defendant did not move to withdraw his plea, and he did not appeal.

¶ 10 On June 13, 2016, defendant filed a *pro se* postconviction petition. As pertinent here, it alleged as follows. Defendant had "recently learned" that he was subject to "a lifetime of MSR imprisonment imposed on him by the Illinois Dept of Corrections staff and Illinois Prisoner Review Board." A "counselor" had told him that, if he could not secure an approved residence after he was released, he would be imprisoned for life, per the conditions of his MSR. When he pleaded guilty, defendant did not realize that, even after his prison term was over, his imprisonment could be continued indefinitely based on his failure to obtain approved housing; "he [had] understood that the term of MSR is required by law to be served *beyond* the confines of a prison facility or any type of GPS or electronic monitoring device." (Emphasis in original.) Defendant's petition concluded:

> "[T]he defendant argues that counsels [*sic*] assistance was ineffective. Counsel failed to ensure the Defendant entered a knowing and voluntary plea. The Defendant contends that had counsel advised him of the actual mandatory supervised release term, he would not have pleaded guilty and would have proceeded to trial. The Defendant was not fully admonished of *all* the collateral consequences involving his case." (Emphasis in original.)

¶ 11 The trial court summarily dismissed the petition. Defendant timely appealed.

¶ 12                              II. ANALYSIS

¶ 13 On appeal, defendant contends that his petition stated the gist of a meritorious claim that his trial attorney was ineffective for failing to inform him that he could serve part or all of his MSR term in prison if he did not satisfy the conditions of MSR, including obtaining approved housing in a permissible location.

¶ 14 The trial court may summarily dismiss a petition that is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). To survive summary dismissal, the petition need state only the gist of a meritorious claim of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 244-45 (2001). The petition need not make legal arguments or cite legal authority. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Our review is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998). To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was objectively unreasonable and (2) the defendant was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *People v. Valdez*, 2016 IL 119860, ¶ 14.

¶ 15 First, we note the following. To be released on MSR, a defendant must have a satisfactory release plan, including an intended residence that meets several conditions (see 730 ILCS 5/3-3-7(a)(7.6) (West 2012)).[1] If he completes his prison sentence but his release plan does not meet these conditions, he will be kept in prison. Such continued custody is based on the legal fiction that he was released on MSR and, by violating a condition, was immediately returned to

---

[1]Also, under the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2012)), the residence must be located more than 500 feet from a school, park, or playground (*id.* § 8(a)).

custody. This is commonly known as being " 'violat[ed] at the door.' " *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 9; *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 28 n.4.

¶ 16 Defendant contends that his trial counsel should have informed him that his sentence of eight years' imprisonment did not eliminate the possibility that he would serve life in prison. He argues that, even if the conditions of MSR and its possible revocation were collateral consequences of his plea, his counsel was still obligated to inform him of them. See *Padilla v. Kentucky*, 559 U.S. 356, 367-70 (2010) (deficient advice about immigration consequences of guilty plea can support claim of ineffective assistance); *People v. Hughes*, 2012 IL 112817, ¶¶ 50-51, 60 (deficient advice about possible commitment as sexually violent person can support claim of ineffective assistance). He thus asserts that he met *Strickland*'s performance prong.

¶ 17 We need not decide whether the claim satisfied *Strickland*'s performance prong because it did not satisfy the prejudice prong. To do so, it had to raise the gist of a meritorious allegation that it is reasonably probable that, absent counsel's error, defendant would not have pleaded guilty but would have insisted on going to trial. *Valdez*, 2016 IL 119860, ¶ 29; *People v. McCoy*, 2014 IL App (2d) 100424-B, ¶ 16. This required more than "[a] conclusory allegation" to that effect. *Valdez*, 2016 IL 119860, ¶ 29. Needed were facts to show that the decision to reject the plea bargain would have been rational under the circumstances. See *id.*

¶ 18 Where, as here, the allegedly deficient representation involved not defense strategy or the chance of an acquittal but instead the consequences of a guilty plea, the defendant need not articulate a claim of innocence or a plausible defense. See *People v. Brown*, 2017 IL 121681, ¶ 45. However, he must raise more than a bare allegation that, absent counsel's errors, he would have spurned the guilty plea and proceeded to a trial. *Id.* ¶¶ 47-48. The relevant circumstances are still crucial to assessing prejudice, and the defendant must show that the decision to proceed to a trial would have been rational. *Id.* ¶ 48. The potential penalties and the probability of an acquittal (which necessarily subsumes the existence of a plausible defense) are among these circumstances. See *id.* ¶¶ 49-51. We conclude that the *pro se* petition did not meet this test.

¶ 19 Defendant correctly notes that his petition raised more than a mere allegation that he would not have pleaded guilty had he known of the possibility that he would serve some or all of his MSR term in prison and not on release. However, his petition still did not meet even the low threshold for surviving summary dismissal. We note the following.

¶ 20 Defendant was charged with a Class X felony that exposed him to a sentencing range of 6 to 60 years' imprisonment. 720 ILCS 5/11-1.40(b)(1) (West 2012). By pleading guilty to a less serious charge, he obtained a sentence of eight years. Although it is unlikely that he would have received the maximum Class X sentence, even a sentence somewhere in the middle of the range would have far exceeded what he received under the agreement. Moreover, although defendant notes that the record does not show that the evidence of his guilt was overwhelming, we note that his petition did nothing to put forth a plausible defense based on anything more than attacking the credibility of H.T. The record shows that, in addition to her testimony, the State had several of her out-of-court statements that it planned to introduce at trial; although there was no guarantee that these statements would be admitted, there was no assurance that any of them, much less all of them, would be excluded. Notably, defendant did not oppose the admission of the statements but decided to plead guilty instead. Further, the State also had

evidence that he had committed a separate uncharged sexual offense against H.T. Defendant chose not to contest the motion *in limine* to admit this evidence.

¶ 21    In sum, defendant did not allege facts to establish the gist of a meritorious argument that, had he known of the possibility—not certainty, or even clear probability—of serving his MSR term in prison, he would have forgone pleading guilty and chosen a trial that would have exposed him to the risk of a far greater prison term, with no more assurance of serving his MSR term outside prison walls.

¶ 22    Defendant relies on *McDonald*. There, the defendant was charged with two counts of criminal damage to property, one a felony and one a misdemeanor, and two counts of violating an order of protection. *McDonald*, 2018 IL App (3d) 150507, ¶ 3. In exchange for the dismissal of one count of violating an order of protection, he pleaded guilty to the remaining three counts. *Id.* There was no agreement on sentencing. The trial court imposed an 18-month prison term for the felony property conviction, to run concurrently with a 364-day jail sentence for the misdemeanor, and an 18-month prison sentence for the violation offense, to run consecutively to the other sentences and to be followed by four years of MSR. *Id.* ¶ 4.

¶ 23    The defendant filed a *pro se* petition under the Act, alleging that he had not been fully informed of the consequences of his plea, *i.e.*, that, as an indigent and a convicted sex offender, he would be required to serve his MSR term in prison. *Id.* ¶ 5. The trial court moved the petition to the second stage and appointed the defendant's trial counsel to represent him. *Id.* In a supplemental affidavit, the defendant stated that he had not been fully advised that he " 'would not be placed on [MSR] if [he] was indigent and homeless.' " *Id.* ¶ 6. Thus, the affidavit alleged, he had been unaware that his MSR term " 'would extend [his] period of incarceration by 2 years.' " *Id.* The court moved the petition to the third stage, an evidentiary hearing. The defendant's new attorney elicited testimony from trial counsel that, before the entry of the plea, he had been aware that the defendant was a registered sex offender, but he had not discussed with him the need to obtain a suitable residence for his MSR term or face the possibility of serving the MSR term in prison. *Id.* ¶ 10. The court denied the petition.

¶ 24    On appeal, the defendant contended that, at the third stage of the proceeding, his postconviction counsel had rendered unreasonable assistance (see *People v. Flores*, 153 Ill. 2d 264, 276 (1992)) for failing to amend the petition to argue that his trial counsel had been ineffective for failing to inform him of the potential of serving his MSR term in prison. *McDonald*, 2018 IL App (3d) 150507, ¶ 25. The appellate court agreed. The court explained that, although the allegations in the supplemental affidavit (quoted earlier) did not state a cognizable claim, they "state[d] enough of a 'gist' of a constitutional claim to proceed to the second stage." *Id.* ¶ 28. The court added, however, that, to prevail on his claim of ineffective assistance, the defendant would still have had to show prejudice. *Id.* Thus, the *pro se* petition "did not state a legally sufficient claim and therefore required amendment by counsel so that such a claim could be formed." *Id.* ¶ 31.

¶ 25    The court rejected the State's argument that postconviction counsel could not have performed unreasonably, as the claim was inherently meritless. The court relied on the long-standing rule that, where postconviction counsel does not fulfill his duties, a remand for compliance is required regardless of whether the claim raised in the petition has merit. *Id.* ¶ 33; see *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). The court did note, however, that there was no case law holding that the failure to warn a client of the possibility of being "violated at the door" can never amount to ineffective assistance. *McDonald*, 2018 IL App (3d) 150507, ¶ 33.

- 5 -

The court also noted that the defendant had been admonished that he faced a maximum term of three years' imprisonment but actually faced the possibility of spending up to seven years in prison, four of them based on MSR noncompliance. *Id.*

¶ 26 Defendant asserts that *McDonald* supports his contention that his *pro se* petition stated the gist of a meritorious claim that his trial counsel was ineffective for failing to advise him that, if he could not find suitable housing, he would spend some or all of his MSR term—potentially the rest of his life—in prison. He compares the language in his petition to the language that the appellate court in *McDonald* held stated the gist of a meritorious claim of ineffective assistance. He reasons that, if the *McDonald* defendant's allegation was good enough to withstand the first stage of consideration under the Act, so was his.

¶ 27 We acknowledge that *McDonald* does support defendant. The passage that the court held stated the gist of a meritorious claim of ineffective assistance was indeed limited. Most notably, it did not explicitly allege prejudice at all—not even a bare conclusion that, had the defendant been advised of the possibility of serving his MSR term in prison, he would have forgone the plea and proceeded to a trial. Thus, the court implicitly held that a *pro se* petition's allegation of ineffective assistance of counsel in the guilty-plea context can survive the first stage under the Act even if it fails to allege prejudice. Although this holding would be of great service to defendant, it is not in accord with established law and, in particular, this court's opinion in *McCoy*.

¶ 28 In *McCoy*, the defendant pleaded guilty to armed robbery; in return, the State dismissed two counts of burglary. The trial court then sentenced the defendant to 10 years' imprisonment. *McCoy*, 2014 IL App (2d) 100424-B, ¶ 3. The defendant later filed a *pro se* postconviction petition claiming that his trial counsel had been ineffective in various respects. *Id.* ¶¶ 4-5. The trial court summarily dismissed the petition. *Id.* ¶ 11. We affirmed, holding that the petition had failed to allege prejudice. We noted that the defendant had not alleged that, absent counsel's errors, he would have pleaded not guilty and gone to trial. *Id.* ¶ 18. Further, the record belied any such assertion, as the defendant's codefendant would have implicated him and, by entering the plea, the defendant had avoided facing the two burglary charges. *Id.*

¶ 29 *McCoy* requires a *pro se* petition's claim of ineffective assistance to satisfy the "gist" requirement for *both* prongs of *Strickland*, not merely the performance prong. This, of course, is consistent with *Strickland* itself. See *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). Insofar as *McDonald* holds otherwise, we do not follow it.

¶ 30 Moreover, even were we to read *McDonald* as implying that the defendant had satisfied the prejudice prong of *Strickland*, it would be distinguishable. In *McDonald*, the defendant's plea bargain contained no agreement on sentencing (as far as the opinion discloses). Although one Class 4 felony charge was dismissed, he pleaded guilty to three other charges; one was a misdemeanor, but another was a Class 4 felony and the remaining charge (criminal damage to property) was at least a Class 4 felony (see 720 ILCS 5/21-1(a)(1), (d)(1)(C), (d)(1)(F)-(J) (West 2012)). The defendant's plea agreement did not lower the classification of any offense to which he pleaded guilty; thus it did little to lessen his aggregate sentence.

¶ 31 Here, as we noted earlier, the plea agreement reduced the classification of the sole charge against defendant *and* limited his sentencing exposure to the lower-medium range of the reduced classification. Thus, by entering the plea agreement, defendant avoided a discretionary sentence of at least 6 and as much as 60 years and obtained a sentence of 8 years. As noted, although it is unlikely that he would have received the maximum Class X sentence, even a

sentence somewhere in the middle of the Class X range would have far exceeded what he received in the bargain. Therefore, even were the allegations of the *pro se* petition in *McDonald* sufficient to plead prejudice at the first stage under the Act, that would not help defendant here.

¶ 32    In oral argument, defendant cited *Jae Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017), to support his contention that, despite the weakness of the evidence of record, he sufficiently alleged the gist of the prejudice prong. In *Jae Lee*, the defendant, a Korean national and a legal permanent resident who had been in the United States for 35 years, was charged with possessing illegal drugs. Under federal law, deportation was nondiscretionary and essentially certain. However, his trial attorney informed him that, if he pleaded guilty, he would receive a lesser sentence than were he to go to trial, and he would not be deported. Based on that advice, the defendant pleaded guilty. *Id.* at ___, 137 S. Ct. at 1963.

¶ 33    The defendant then sought postconviction relief based on ineffective assistance of counsel. At an evidentiary hearing, he and his former attorney both testified that deportation had been the determinative factor in his decision to plead guilty. *Id.* at ___, 137 S. Ct. at 1963. The federal district court denied relief, and the appellate court affirmed, both holding that the defendant had failed to show prejudice. They reasoned that, because the evidence of guilt had been overwhelming and a longer prison term was likely after a trial, he had not shown that a rational defendant would have chosen going to trial over pleading guilty. *Id.* at ___, 137 S. Ct. at 1964; see *Jae Lee v. United States*, 825 F.3d 311, 313 (6th Cir. 2016).

¶ 34    The Supreme Court reversed, holding that under the circumstances the defendant had met his burden of proof. The Court explained that the question of whether the defendant would have chosen a trial over a guilty plea could not be decided solely on the basis of his chance of an acquittal. The defendant had adduced evidence that, had he been properly advised that deportation would inevitably follow a conviction, he would have taken his chance, however remote, on the possibility of an acquittal. The defendant had repeatedly asked his attorney about whether there was a risk of deportation if he pleaded guilty; he had told the court at the guilty-plea hearing that the risk of deportation had affected his decision; he and the attorney had both testified that deportation was the determinative issue in his decision; and the effects of deportation would have been extremely severe, including a forced return to a country that he had not seen in nearly three decades, the loss of a successful business, and separation from elderly parents who depended on him for their care. *Jae Lee*, 582 U.S. at ___, 137 S. Ct. at 1968-69. The Court cautioned that its decision did not allow courts to overturn guilty pleas "solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at ___, 137 S. Ct. at 1967.

¶ 35    Defendant's situation differs markedly from that of the defendant in *Jae Lee*, even considering that this case involves a first-stage dismissal. *Jae Lee* does not support holding that defendant showed even the gist of a meritorious assertion of prejudice.

¶ 36    Unlike the certain deportation in *Jae Lee*, the danger of the *administrative* decision to *violate defendant at the door* is contingent and to a considerable degree within his control. The defendant in *Jae Lee* would lose his home in the United States permanently, as a matter of clear *statutory* command. He adduced considerable evidence that deportation was the determinative issue in his decision to accept the plea deal. *Id.* at ___, 137 S. Ct. at 1967-68. For the defendant in *Jae Lee*, "deportation after some time in prison was not meaningfully different from deportation after somewhat less time." *Id.* at ___, 137 S. Ct. at 1967. Here, defendant is subject

to the *possibility* of a delay in his release from prison, based on a serious but uncertain risk that he will not find suitable housing and will be violated at the door by the Prisoner Review Board. For this deprivation to be permanent, the denial would have to be repeated many times. Thus, the provision of more complete information about the housing requirement would not have induced defendant to go to trial in the face of strong evidence and the substantial risk of a prison term decades longer than the one to which he agreed.

¶ 37                                   III. CONCLUSION
¶ 38        The judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 39        Affirmed.