NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210733-U

NO. 4-21-0733

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 29, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Vermilion County |
| DARIN L. DAVIS, | ) | No. 16CF304 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Derek J. Girton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the summary dismissal of defendant's postconviction petition. Defendant did not allege facts supporting a conclusion that he suffered arguable prejudice from his attorney's failure to inform him that his guilty plea could subject him to civil commitment.

¶ 2    Defendant, Darin L. Davis, appeals an order summarily dismissing his postconviction petition. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On May 6, 2016, the State charged defendant by information with five offenses arising out of his alleged sexual assault of a woman the day before. This was docketed as case number 16-CF-304. Count I alleged aggravated criminal sexual assault in that defendant committed an act of sexual penetration by the use of force or threat of force and acted in such a manner as to threaten or endanger the victim's life. 720 ILCS 5/11-1.30(a)(3) (West 2016).

Count II alleged criminal sexual assault in that defendant committed an act of sexual penetration by the use of force or threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2016). Count III alleged criminal sexual abuse in that defendant committed an act of sexual conduct by the use of force or threat of force. 720 ILCS 5/11-1.50(a)(1) (West 2016). Count IV alleged unlawful restraint in that defendant knowingly and without legal authority detained the victim. 720 ILCS 5/10-3(a) (West 2016). Count V alleged aggravated criminal sexual assault in that defendant committed an act of sexual penetration by the use or threat of force and displayed, threatened to use, or used a dangerous weapon other than a firearm. 720 ILCS 5/11-1.30(a)(1) (West 2016).

¶ 5        When defendant appeared in court on May 6, 2016, the prosecutor informed the court that defendant also faced a charge of "criminal sexual abuse with use of force" in Vermilion County case number 16-CF-53. The prosecutor stated that defendant was "out on bond" on that charge. The prosecutor also represented that defendant had prior convictions in 2006 for "meth manufacturing" (a Class 2 felony) and "aggravated unlawful restraint" (a Class 3 felony). The court set defendant's bond at $250,000 for the new charges in case number 16-CF-304. Defendant did not post bond.

¶ 6        The State elected to proceed first on case number 16-CF-304. On March 13, 2017, the State filed a motion to admit evidence that defendant sexually assaulted other women in 2014 and 2006. The 2014 incident gave rise to the pending charge in case number 16-CF-53. The 2006 incident resulted in defendant's conviction for aggravated unlawful restraint. In this motion, the State recounted details of the crimes allegedly perpetrated by defendant.

¶ 7        On March 27, 2017, the parties presented the court with a fully negotiated plea agreement. Per the agreement, defendant would plead guilty to count II in case number 16-CF-304 (criminal sexual assault with the use of force or threat of force). In exchange, the

State would dismiss all other counts in both pending cases. Defendant would serve 6 years in prison at 85%, with credit for 325 days served in jail.

¶ 8    Although criminal sexual assault is a Class 1 felony (720 ILCS 5/11-1.20(b)(1) (West 2016)), defendant was subject to sentencing as a Class X offender based on his criminal history. 730 ILCS 5/5-4.5-95(b) (West 2016). When presenting the plea agreement, the parties agreed that defendant had previous convictions for aggravated unlawful restraint, manufacturing methamphetamines, and burglary. The parties disputed whether defendant had other convictions from Texas. However, even without the Texas convictions, defendant was subject to sentencing as a Class X offender.

¶ 9    At the plea hearing, there was initially some confusion about the length of defendant's period of mandatory supervised release. Ultimately, the parties agreed that defendant would serve a period of mandatory supervised release between 3 years and life. Defendant's counsel shared his understanding that "DOC determines [the length of mandatory supervised release] upon release based on their evaluation of [defendant] from his sex offender treatment programs." Defense counsel also stated that he advised defendant that he would be subject to lifetime registration as a sex offender.

¶ 10    The State presented a factual basis for the plea. The court questioned defendant to ensure that his plea was knowing and voluntary. The court accepted the plea and sentenced defendant in accordance with the parties' agreement. The court admonished defendant regarding the prerequisites for appealing the judgment. Defendant did not move to withdraw his plea, nor did he take a direct appeal.

¶ 11    On September 30, 2021, defendant filed a *pro se* postconviction petition. Defendant alleged ineffective assistance of counsel for failing to "explain the law" to him.

According to defendant, this caused him to "take a negotiated plea that [he] would have not taken." Specifically, defendant alleged that his counsel failed to inform him that his plea could subject him to civil commitment pursuant to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2020)). Defendant also alleged that his counsel failed to inform him "about the 3 to life parole, and how the 3 to life parole works to get off parole." Defendant further alleged that he was deprived of the benefit of the bargain insofar as his counsel, the State, and the court never informed him of the possibility of civil commitment or that his "release from D.O.C. would be based on a psychological interview." Defendant also asserted that the State breached the plea agreement.

¶ 12    In his accompanying application to proceed *in forma pauperis*, defendant indicated that he was currently detained by the Illinois Department of Human Services. According to the Illinois Department of Corrections's website, defendant was "release[d] to DHS supervision on 6/11/21." Thus, although there is no specific documentation in the record, it appears that defendant may have been committed as a sexually violent person after he completed his six-year prison sentence. In its brief on appeal, the State does not suggest otherwise.

¶ 13    In the record, the "court docket" for case number 16-CF-304 contains the following "Judicial Entry" for November 22, 2021:

> "The Court has reviewed the *Pro se* Petition for Post-Conviction Relief filed by the Petitioner on 9-27-21 [*sic*] and finds it fails to allege the gist of a constitutional claim. The Petition is therefore dismissed. This as [*sic*] a final and appealable order. The Clerk is directed to forward a copy of this docket order to the Petitioner."

The clerk of the court prepared and filed a notice of appeal for defendant on December 21, 2021. We subsequently allowed defendant to file an amended notice of appeal to correct an error in the original notice of appeal.

¶ 14                                II. ANALYSIS

¶ 15        The parties dispute whether the trial court properly summarily dismissed defendant's postconviction petition. The parties focus exclusively on defendant's claim of ineffective assistance of counsel for failing to inform him that his release depended on an evaluation to determine whether he should be civilly committed.

¶ 16        The Post-Conviction Hearing Act allows a person imprisoned in the penitentiary to assert that his or her conviction was the result of a substantial denial of his or her constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020). At the first stage of a postconviction proceeding, the trial court independently reviews the petition, taking the allegations as true (*People v. Tate*, 2012 IL 112214, ¶ 9), to determine whether the petition is "frivolous or *** patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2020)). A court may summarily dismiss a petition as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *Tate*, 2012 IL 112214, ¶ 9. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).

¶ 17        At the first stage, the defendant must set forth only the gist of a constitutional claim, which means that the petition contains "enough facts to make out a claim that is arguably constitutional." *Hodges*, 234 Ill. 2d at 9. Although the threshold for surviving the first stage is low, that "does not mean that a *pro se* petitioner is excused from providing any factual detail at all

- 5 -

surrounding the alleged constitutional violation." *Hodges*, 234 Ill. 2d at 10. We review *de novo* an order summarily dismissing a postconviction petition. *Hodges*, 234 Ill. 2d at 9.

¶ 18    Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Generally, to sustain a claim of ineffective assistance, a defendant must show that his counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient where he or she made errors that were so serious that he or she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant establishes prejudice where "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. 687. In that respect, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 19    Where a defendant alleges ineffective assistance of counsel in a postconviction petition, at the first stage of proceedings the defendant need not show that the *Strickland* standard is satisfied. Instead, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 20    In his postconviction petition, defendant alleged that his counsel was ineffective for failing to inform him that his plea could subject him to civil commitment pursuant to the Sexually Violent Persons Commitment Act. Our supreme court considered a similar claim in *People v. Hughes*, 2012 IL 112817. The court held that "defense counsel has a minimal duty to advise a

defendant who pleads guilty to a triggering offense subject to the provision of the Sexually Violent Persons Commitment Act that he will be evaluated for and may risk involuntary commitment after completing his prison term." *Hughes*, 2012 IL 112817, ¶ 60. Nevertheless, after reviewing the facts adduced at an evidentiary hearing on the defendant's motion to withdraw his plea, the court held that the defendant failed to satisfy either prong of *Strickland*. *Hughes*, 2012 IL 112817, ¶¶ 61-66.

¶ 21 Here, defendant pleaded guilty to criminal sexual assault, which subjects him to evaluation for commitment pursuant to the Sexually Violent Persons Commitment Act. See 725 ILCS 207/5(e)(1) (West 2020) (including criminal sexual assault in the definition of "sexually violent offense"). Nothing in the record contradicts defendant's allegation that his counsel failed to inform him of the possibility of civil commitment, and we must take that factual allegation as true. *Hodges*, 234 Ill. 2d at 10. Accordingly, it is arguable that defendant's counsel's performance fell below an objective standard of reasonableness. The State does not dispute that conclusion.

¶ 22 The remaining question is whether it is arguable that " 'there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Specifically, defendant " 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Brown*, 2017 IL 121681, ¶ 40 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29). This requires "consideration of the specific circumstances" of the defendant's case. *Brown*, 2017 IL 121681, ¶ 41.

¶ 23 In his postconviction petition, defendant asserted, without any supporting factual allegations, that he would not have pleaded guilty had his counsel explained the law to him. The State maintains that defendant's conclusory allegation on this point does not justify second-stage

postconviction proceedings. Defendant insists that his bare conclusion suffices. The State's position prevails.

¶ 24 Defendant was not required to present "a claim of innocence or a plausible defense." *Brown*, 2017 IL 121681, ¶ 45. Nevertheless, "[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice." *Valdez*, 2016 IL 119860, ¶ 29; see also *Brown*, 2017 IL 121681, ¶ 47. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. __, __, 137 S. Ct. 1958, 1967 (2017).

¶ 25 We recognize that defendant was not required to establish prejudice at the first stage of postconviction proceedings. However, to survive summary dismissal on this type of claim, a defendant still "must raise more than a bare allegation that, absent counsel's errors, he would have spurned the guilty plea and proceeded to a trial." *People v. Tucek*, 2019 IL App (2d) 160788, ¶ 18. Even at the first stage, the defendant must provide "facts to show that the decision to reject the plea bargain would have been rational under the circumstances." *Tucek*, 2019 IL App (2d) 160788, ¶ 17. Having failed to provide any facts supporting his conclusion that he would have rejected the plea offer, defendant failed to allege arguable prejudice under *Strickland*.

¶ 26 Furthermore, the record casts doubt on whether it would have been rational for defendant to reject the plea offer. Defendant was charged with six offenses in two different cases. The two charges of aggravated criminal sexual assault in case 16-CF-304 were Class X felonies, which generally are punishable by a prison term of between 6 and 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016). However, one of those charges required a 10-year sentencing enhancement due to the alleged display, threat, or use of a dangerous weapon other than a firearm. 720 ILCS

5/11-1.30(d)(1) (West 2016). If defendant had been convicted of multiple offenses in case number 16-CF-304, and if one of those offenses were either criminal sexual assault or aggravated criminal sexual assault, defendant would have been subject to mandatory consecutive sentencing. 730 ILCS 5/5-8-4(d)(2) (West 2016). Additionally, because defendant allegedly committed the offenses in case number 16-CF-304 while he was on bond awaiting trial in case 16-CF-53, prison sentences in those two cases would run consecutively to each other. 730 ILCS 5/5-8-4(d)(8) (West 2016). In its pretrial motion to admit evidence of other crimes, the State recounted the facts giving rise to the charges, along with defendant's history of sexually assaulting women. If the State proved those allegations at trial, and considering defendant's criminal history, it would have been extremely unlikely that defendant would have received the minimum sentences.

¶ 27        Defendant was born in September 1968, so he was 48 years old when he entered his guilty plea. Defendant was facing prison time that easily could have exceeded his remaining life expectancy. The deal he accepted allowed him to escape prosecution on most of the charges (including the most serious ones) and serve only six years in prison. Although defendant would face the possibility of civil commitment after his prison sentence, the alternative was to proceed to trial and risk a prison sentence that could have been much longer than six years. And had defendant been convicted after a trial, he still could have been civilly committed as a sexually violent person. Under these circumstances, it is not evident from the record why it would have been rational for defendant to reject the plea offer.

¶ 28        For these reasons, we hold that the trial court properly summarily dismissed defendant's postconviction petition.

¶ 29                        III. CONCLUSION

¶ 30        For the reasons stated, we affirm the trial court's judgment.

¶ 31        Affirmed.